## 30099. BANKS v. THE STATE.

JORDAN, Justice.

This case is before this court by appeal from denial of the appellant's motion for new trial and for mandatory review of the death sentences imposed upon the defendant in his trial by jury on two counts of murder. The defendant, Jerry Banks, was charged with committing the offenses of murder on November 7, 1974; he was indicted by a grand jury of Henry County, Georgia on January 13, 1975; and following his trial by jury the death sentence was imposed on each count January 31, 1975.

### I. The Evidence.

During the state's case the following facts were developed. On November 7, 1974, at approximately 5:45 p.m., a detective of Henry County Georgia Sheriff's Department received a telephone call from an unidentified male caller. The caller told the detective that he was driving down Rock Quarry Road in Henry County when he was flagged down by a young black male with a shotgun in his possession. The young black man informed the caller that he had found two bodies in the woods and asked the motorist to call the police. The detective failed to record the name of the caller, and he did not know the caller's name at the time of the trial.

The detective proceeded to Rock Quarry Road where he was met by Jerry Banks, the appellant. The appellant was armed with a single barrel, twelve gauge, shotgun at the time the officer arrived. He told the detective that he had come into the area to go hunting and he saw some blood stains in an old road bed; that he then followed a small dog which he had with him down a path into the woods where he discovered two bodies.

Other officers soon joined them. Two blood stains were located on an old road bed referred to as Old Rock Quarry Road. Approximately 129 feet from the blood stains were two bodies, one male and one female. From the physical scene it was concluded that the two bodies had been dragged by the feet from the old road bed to the spot where they were found. The bodies were partially covered with a red bedspread later identified as belonging to the male victim when the detective arrived on the scene.

No wallets, billfolds, or pocketbooks were discovered on or near the bodies. The male victim had nothing in his pockets. The female victim was wearing a ring inscribed Melanie Hartsfield. The male victim had a University of Georgia class ring on his hand. It was later found to be inscribed "M. W. King" or "Marvin King." The male was wearing a wrist watch.

In a search of the area after the bodies had been removed a piece of plastic was found that came from Marvin King's automobile, later discovered about three miles from the scene of the crimes and approximately one-half mile from the appellant's home. Shotgun wadding was found that upon laboratory examination was determined to be identical to that used in Winchester Western Twelve gauge buckshot shells. A ballistics expert testified he knew of no other manufacturer who used wadding of this type.

After about two hours, darkness required that the search be discontinued until the next morning.

Autopsy that night revealed that the male victim's death had been caused by two shotgun blasts. One wound entered the back of the head and came out the front on the right side of the head. The other entered the right elbow and the back and severed the spinal column. The female victim had also been shot twice with a shotgun. One wound entered the back in the left side and exited from the right side of the abdomen. The other wound entered the right side of the neck and exited from the left side of the head. These wounds caused the death of the female. Death was determined to have occurred about 2:30 p.m. on November 7, 1974.

Buckshot and wadding removed from inside the bodies and the clothing of the victims were sent to the State Crime Laboratory for examination.

On the morning of November 8, 1974, the search of the crime scene area was resumed. Two red Winchester Western double ought buckshot casings were found within forty feet of the two blood stains. The shell casings were examined at the State Crime Laboratory and as a result of their examination appellant was asked to turn his gun over to the detectives for firing test rounds. Test shells fired in the shotgun were examined and determined

to have been fired in the same weapon as those which had been found on November 8, 1974, at the crime scene.

On December 5, 1974, appellant's shotgun was again obtained from appellant's brother's house and laboratory personnel at the State Crime Laboratory test fired it and found that the shotgun shell casings found November 8, 1974, at the scene of the murders were found to have been fired from the appellant's weapon.

The appellant had been questioned previously but was taken into custody on December 5, 1975, and taken to a detective's office where he was asked if he had fired the shotgun in the area where the bodies had been found. He stated that he had not fired the weapon in that area. He also stated that he had not thrown any shells out in that area and that he did not know of anyone who had been hunting in that area. When told that the shells found at the scene matched those fired from his gun, the appellant stated that someone had made a mistake. He said that he had not fired any shots or thrown any shells out within a mile radius of that area.

On December 12, 1974, appellant said he had loaned the gun to another person on the day of the murders. After the named person denied any knowledge of the incident appellant refuted his statement and said he had lied to "get the officers off his back."

Although appellant told officers on one occasion that he had taken the male victim's wallet from the body of the victim, checked it for valuables and threw it into the bushes he later said he found the wallet on the ground between the bodies and the blood stains in the road bed. On December 13, 1974, the wallet containing the male victim's identification, but no money, was found in the general location indicated by the appellant.

On December 13, 1974, a detective found another red Winchester Western double ought buckshot shell casing in the same general area as the first two. On examination this shell was determined to have been fired in the appellant's shotgun.

The age of the shell casings could not be determined. Two witnesses were presented for the defense.

Grace Slaughter, appellant's neighbor, testified that on November 7, 1974, the appellant came to her house at

9:30 a.m. and stayed there all day helping her husband until he left around 5:00 or 5:30 p.m. Mrs. Slaughter remembered these times because she said the appellant comes to her house every day at 7:30 a.m., stays all day and leaves around 5:30 p.m. Appellant has been doing this since last summer.

Perry Banks, appellant's brother, testified that he had been hunting near the scene of the murders with the shotgun in question approximately a week before his brother discovered the bodies. He stated that he had fired this shotgun in this area and that he had shot red shells in the area in December prior to the time the third shell casing was found.

One of the appellant's grounds in his motion for new trial was based on newly discovered evidence in that the identity of the passing motorist who was flagged down by the appellant was not discovered until after the trial. The state contended, and the trial court agreed, that the testimony of Mr. Eberhardt, the passing motorist who called the police at the request of the appellant, would be merely cumulative of evidence produced at the trial. We do not agree with this conclusion and it is our opinion that the trial court erred in not granting the appellant's motion for new trial on this ground.

In support of this ground the appellant submitted the affidavit of Mr. Eberhardt, the passing motorist, to the effect that he was flagged down by a black male about 5:30 p.m. on the date in question; that the black male was dressed in hunting attire; that he had a small dog with him; and that he "seemed calm" at the time. The affidavit of Mr. Eberhardt further stated that he gave his name to the police at the time he made the call and that prior to the preliminary hearing and the grand jury indictments he made his name known to the investigating officers and was informed that they would call him if he was needed; that after the trial he went to the presiding judge and also to the sheriff who then took a statement from him. All of the investigating officers, including the sheriff, denied knowledge of the identity of the caller on the trial of the case.

The state's evidence in this case is based wholly and exclusively on circumstantial evidence, and under the

facts of this case we think it was highly important to the theory of the defendant's case that the testimony of the passing motorist should have been made available to the jury. He was the only person who could corroborate the statement given to the police by the appellant. The appellant told the police he was hunting in the area at the time and that he had a small dog with him who led him to the bodies. The very heart of the appellant's defense was based on the truthfulness and the veracity of his statements to the police during the investigation. The verification of certain of these facts by the unidentified motorist could have effectively bolstered the veracity of the appellant's statements.

Without the testimony of the passing motorist the jury might well have concluded that this so-called "mystery" caller was a part of the design and scheme of the defendant to deceive and mislead the investigating officers. The testimony of Eberhardt at another trial would completely refute any such inference and would tend to establish the fact, though contradicted, that the sheriff and other investigating officers knew of his identity all along and that such information was either intentionally or inadvertently kept from the defendant and his counsel. See Brady v. Maryland, 373 U. S. 83.

On the basis of the discovery of the identity of the unknown passing motorist and on the basis of his affidavit in support of the motion for new trial, the trial court should have granted the defendant's motion for new trial on this ground.

*Judgment reversed. All the Justices concur.*

Argued July 7, 1975 — Decided September 12, 1975.

*Myers, Mull & Sweet, Hudson John Myers,* for appellant.

*Edward McGarity, District Attorney, Kenneth R. Waldrep, Assistant District Attorney, Arthur K. Bolton, Attorney General, G. Stephen Parker, Assistant Attorney General,* for appellee.