## 36175. BANKS v. THE STATE.

UNDERCOFLER, Chief Justice.

This appeal involves an extraordinary motion for new trial in a death case based on newly discovered evidence. The trial court denied the motion. We reverse.

Marvin King, a Jonesboro High bandleader, and Melanie Hartsfield, a former student, were found murdered in a wooded area of Henry County. The evidence showed that they were killed by two shotgun blasts each, one in the back and one in the head, from a close range, at approximately 2:30 p.m. on November 7, 1974. Later that afternoon, Jerry Banks, while deer hunting with a dog, discovered the bodies and alerted the police by flagging down a passerby, who called the sheriff. When three red Winchester-Western 00 shotgun shells, found 30 to 50 feet from the murder site, were traced to Banks' gun, he was indicted and tried for the murders. Banks' gun was an old single-barrel, .12 gauge shotgun.

Banks' first conviction and death sentence were reversed on a Brady (v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1962)) error, because the sheriff had not revealed to the defense the passerby's name, although it was known to him. *Banks v. State*, 235 Ga. 121 (218 SE2d 851) (1975). On retrial, Banks' subsequent conviction and death sentence were affirmed, *Banks v. State*, 237 Ga. 325 (227 SE2d 380) (1976), with three judges dissenting to the

imposition of the death sentence. Banks' habeas, based inter alia on the ineffective assistance of his since disbarred attorney, was denied and affirmed on appeal. *Banks v. Glass,* 242 Ga. 518 (250 SE2d 431) (1978) (Hill, J., dissenting.) See *Patrick v. State,* 238 Ga. 497 (233 SE2d 757) (1977); *Bailey v. State,* 139 Ga. App. 321 (228 SE2d 357) (1976).

At the hearing on this extraordinary motion for new trial, Banks presented newly discovered evidence that meets the standard set out in *Bell v. State,* 227 Ga. 800 (183 SE2d 357) (1971), entitling him to a new trial. Given the circumstantial nature[1] of the case against him, we cannot say that the new evidence would not have resulted in a different verdict. This is especially true, where, as here, there is so much new evidence that real doubt is created that Banks has heretofore received a fair trial. The new evidence is summarized below.

1. Four men building a house about 800 yards from the death site heard several shots fired in rapid succession at about 2:30 the afternoon of the killings, November 7, 1974. This information was related to two detectives doing a neighborhood survey the next day. A memo was circulated among all the detectives, but has since disappeared from the files. All four men appeared (one by deposition) at the motion hearing and testified that the shots they all heard were inconsistent with a single-shot shotgun and came from the direction of the murders.

2. A farmer, outside building a calf pen, heard several rapid-fire shots at 2:30 p.m., from the direction in which the slayings occurred. Several minutes later, he passed near the murder site on the way to pick up his son at school, and noted a black van parked atop a bank by the road. A white man in an army jacket had his foot propped up on the back of the van, while smoking a cigarette and holding a shotgun that looked like a Browning automatic. After he heard about the murders the next day, this witness called Sheriff Glass at home about eight that night to pass along this information. Sheriff Glass does not recall the phone call.

3. Paul Collier, Sr., the Stockbridge Chief of Police, his son, also a policeman, and a game warden were at the city dump to test fire the warden's pistol. While they were setting up targets, the two policemen recall hearing three or four shots from a weapon fired in

---

[1]Code Ann. § 38-109 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

rapid succession, too fast to be from a single-shot gun, come from the direction of the killings. The warden was wearing earmuffs because of deafness caused by firing guns and did not hear any shots. The chief of police called the sheriff's department and related the information. No one there remembers taking such a call.

4. Another man, about noon on November 7, 1974, recalled having seen two cars, one a cream-colored Chevy he took to be an unmarked police car by its antenna, and the other, a dark-colored, small, station wagon (the victim, King, was driving a red Opel station wagon) on a road about a half mile from the scene of the murders. A woman, sitting in the passenger side of the station wagon, was trying to pull the smaller of two men back into that car. The two men were facing each other and clearly arguing. The witness went to the Henry County Sheriff's office and told this story to two detectives, who made a written memorandum. Two detectives claim this memo is still in the case file.

5. Mayor George Hart of Stockbridge, visiting the scene of the murders two days after the killings with Chief Collier, found two green shotgun shells in the grass a few feet off the roadbed from where the killings had taken place. He turned them over to Chief Collier, who notified Sheriff Glass's office. Someone from that office picked up the shells that Collier had placed in an envelope several days later, but no one now recalls doing so and these shells have disappeared.

6. The ballistics experts who testified said Banks' gun could not have been fired in rapid succession; that no less than four to five seconds would be necessary to break the gun, throw out the spent shell, reload and refire it. In addition, the testimony was that the stock was loose, that half the time, upon breaking the gun, it came apart, and that the ejector did not throw the empty shells out of the gun.

The ballistics experts also noted that the wounds were consistent with either an automatic or a single-shot weapon. Only one wound contained the white polyethylene packing granules unique to the Winchester-Western 00 shells that were linked to Banks' gun. The experts testified that, at the close range from which the shots were inflicted, they would have expected similar granules in or near the other three wounds as well.[2] One expert added, however, that it was possible that the granules just did not stick in these wounds.

Because we have concluded that this newly discovered

---

[2] The expert's testimony was that neither white granules, which are found only

evidence raises sufficient question about the verdict in Jerry Banks' earlier trial to warrant a retrial, we need not here reach the Brady, supra, issue regarding the newly discovered evidence.

In another enumeration, Banks raises as error the refusal of the trial court to make the prosecution's case file, which was inspected in camera, a part of the record on appeal. It was, however, ordered sealed by the trial court pursuant to its inspection as a result of a new Brady motion filed by Banks. We ordered the file transmitted to this court and have made an in camera review of it.

In his new Brady motion, Banks seeks to discover any other evidence, unknown to him, possessed by the State. Along with a general request for exculpatory evidence, Banks specifically requested other shells found at the scene and other persons noted in the area of the murders the afternoon of November 7, 1974. The State's file reveals a ".12 gauge S & W Fiocci cartridge case identified as found at the scene" as well as statements by two passersby of other cars seen in the area that afternoon. We have by separate order designated these items for release to Banks, and have returned the sealed files to the trial court.

We make clear here that this order in no way precludes further action by the trial court regarding Banks' Brady motion in light of further evidence which may later develop. On the record now before us, we find no other evidence that must be released to Banks.

*Judgment reversed. All the Justices concur, except Bowles, J., who dissents.*

ARGUED MAY 13, 1980 — DECIDED
JUNE 9, 1980.

*A. J. Welch, Jr., Stephen P. Harrison, Wade M. Crumbley,* for appellant.

*E. Byron Smith, District Attorney, W. Hal Craig, Assistant District Attorney, Arthur K. Bolton, Attorney General,* for appellee.

---

in Winchester-Western shells, nor black granules, which, among other brands, are contained in green Remington-Peters shells, were discovered in the other three wounds. Other brands of .12 gauge 00 shotgun shells do not contain any such granules.