MOYE, Chief Judge.
 

 ORDER
 

 The Court examines the above-styled case in its preliminary stage in order to consider defendants’ motion to disqualify Wade M. Crumbley, Stephen P. Harrison, and Bobby Lee Cook from serving further as counsel for plaintiff Nannie L. Dodson.
 

 I.
 

 This is a civil action for compensatory and punitive damages brought by Nannie L. Dodson, Administratrix of the Estate of Jerry Banks, deceased, against Henry County, Georgia, Jimmy H. Glass, Sheriff of Henry County, Georgia, and five additional law enforcement officials of said county. The detailed complaint, brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), 1986 and 1988, bases jurisdiction on 28 U.S.C. §§ 1331 and 1343(1)-(4). It is alleged within the complaint that the acts and omissions of defendants caused Jerry Banks to be convicted of two counts of murder, sentenced to death, and incarcerated for over six years for a crime which he did not commit. Specifically, the complaint alleges the defendants:
 

 (1) Deprived Plaintiff’s decedent of his Fourteenth Amendment due process right to have disclosed to him exculpatory evidence known to the State;
 

 (2) Deprived him of his rights under the Sixth and Fourteenth Amendments to have compulsory process of obtaining witnesses in his favor, to be confronted with witnesses against him and to effective assistance of counsel;
 

 (3) Deprived him of his Fourteenth Amendment due process right not to have false and perjured testimony used against him;
 

 (4) Deprived him of his Fourteenth Amendment due process right to have access to exculpatory physical evidence; and
 

 (5) Deprived him of his Fourteenth Amendment right to equal protection of the law, and not to be prosecuted because of his race.
 

 All of the above conduct was allegedly intentional, reckless, wanton, wilful, and grossly negligent, and was maliciously, wantonly, and oppressively done.
 

 The above allegations are based upon thirty-eight lengthy paragraphs of factual averments which, in summary, indicate the following: Plaintiff’s deceased Jerry Banks was convicted of two counts of murder and sentenced to death in Henry Superior Court on January 31, 1975, but the conviction was overturned and a new trial granted by the Georgia Supreme Court on direct appeal.
 
 Banks v. State,
 
 235 Ga. 121, 218 S.E.2d 851 (1975) . On retrial on November 17 and 18, 1975, Banks was again convicted on two counts of murder and sentenced to death, following which he was transferred from the Henry County Jail, where he had been continuously incarcerated since December 11,1974, to Death Row at the Georgia Diagnostic and Classification Center in Butts County, Georgia. Banks’ direct appeal of his second conviction was without success,
 
 Banks v. State,
 
 237 Ga. 325, 227 S.E.2d 380 (1976) , as was his subsequent habeas petition,
 
 Banks v. Glass,
 
 242 Ga. 518, 250 S.E.2d 431 (1978). In 1980, however, Banks’ extraordinary motion for a new trial, based upon six paragraphs of newly discovered evidence, was ordered granted by the Supreme Court.
 
 Banks v. State,
 
 246 Ga. 1, 268 S.E.2d 630 (1980). The District Attorney of the Flint Judicial Circuit filed a motion
 
 *1054
 
 seeking the trial judge’s consent in the entry of a nolle prossequi on December 22, 1980, and said motion being granted, Banks was released. The complaint alleges that from and after June 10, 1979, Banks discovered a large body of theretofore undisclosed, exculpatory evidence. All of this evidence was allegedly known to the defendants Floyd, Robbins, Howard, Barnes, and Glass, and had never been disclosed to Banks or his counsel, or to the District Attorney and his assistants. None of the exculpatory evidence described was ever voluntarily disclosed by the defendants, according to the complaint, but was discovered from third parties and by judicial process. None of the exculpatory evidence was presented at Banks’ two trials.
 

 II.
 

 Having outlined the civil action before the Court, a matter necessary for the reader to understand fully the defendants’ motion for disqualification of plaintiff’s counsel, the Court now focuses upon the pending motion.
 

 Defendants’ motion for disqualification asserts that Mr. Crumbley’s representation of Henry County, Georgia, in the capacity of assistant county attorney and county attorney from the summer of 1979 through January 1981, and his association with the law firm of Smith, Welch, and Meadows for the period from the summer of 1980 until immediately prior to the filing of the present action violates Canons 4 and 9 of the Code of Professional Responsibility, made applicable to members of the State Bar of Georgia, as reprinted at 241 Ga. 643, 651-721 (1978). Said motion further asserts that Mr. Crumbley’s association with Mr. Harrison and the law firm of Cook & Palm-our as co-counsel for plaintiff in the preparation of this action requires their similar disqualification.
 

 The relevant test in disqualification matters is clearly settled in this Circuit and others: where an attorney represents a party in a matter in which the adverse party is that attorney’s former client, the attorney will be disqualified if the subject matter of the two representations are “substantially related.”
 
 See Duncan v. Merrill Lynch, Pierce, Fenner & Smith,
 
 646 F.2d 1020 (5th Cir. 1981);
 
 Brennan’s, Inc. v. Brennan’s Restaurants, Inc.,
 
 590 F.2d 168 (5th Cir. 1979);
 
 Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,
 
 559 F.2d 250 (5th Cir. 1977);
 
 In Re Yarn Processing Patent Validity Litigation,
 
 530 F.2d 83 (5th Cir. 1976) (decisions of controlling authority adopting rule)
 
 and Westinghouse Electric Corp. v. Gulf Oil Corp.,
 
 588 F.2d 221 (7th Cir. 1978);
 
 Government of India v. Cook Industries, Inc.,
 
 569 F.2d 737 (2d Cir. 1978) (decisions of other Circuits adopting rule);
 
 T. C. Theatre Corp.
 
 v. Warner
 
 Bros. Pictures, Inc.,
 
 113 F.Supp. 265 (S.D.N.Y. 1953) (genesis of substantial relationship test). The rule embodies the substance of Canons 4 and 9 of the A.B.A. Code of Professional Responsibility. Canon 4 provides that a “lawyer should preserve the confidences and secrets of a client,” and Canon 9 provides that “a lawyer should avoid even the appearance of professional impropriety.” As a result, it is clear that the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information
 
 might have been given
 
 to the attorney in relation to the subsequent matter in which disqualification is sought. The effect of the Canons is to restrict the inquiry to the possibility of disclosure; it is not appropriate for the Court to inquire into whether actual confidences were disclosed.
 
 Westinghouse Electric Corp. v. Gulf Oil Corp.,
 
 588 F.2d 221, 224 (7th Cir. 1978);
 
 In Re Yarn Processing Patent Validity Litigation,
 
 530 F.2d 83, 89 (5th Cir. 1976).
 

 The Court must presume that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation because such a presumption is necessary to aid the frank exchange between attorney and client by helping to preclude even a possibility that information given in confidence by the former client will be used without the client’s consent.
 
 Id.
 
 Were an attorney permitted to represent a client whose cause is
 
 *1055
 
 related and adverse to that of his former client he would be called upon to decide what is confidential and what is not, and, perhaps, unintentionally to make use of confidential information received from the former client while espousing his cause.
 
 T. C. Theatre Corp. v. Warner Bros. Pictures,
 
 113 F.Supp. 265, 269 (S.D.N.Y.1953). Doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification. 588 F.2d at 225;
 
 International Business Machines Corp. v. Levin,
 
 579 F.2d 271, 283 (3d Cir. 1978);
 
 Hull v. Celanese Corp.,
 
 513 F.2d 568, 571 (2d Cir. 1975);
 
 Chugach Electric Association v. United States District Court,
 
 370 F.2d 441, 444 (9th Cir. 1966),
 
 cert. denied,
 
 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967).
 

 In view of the above, disqualification questions require three levels of inquiry. Initially, the Court must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. The Court must place the burden of proving that the present and prior representations are substantially related on the party seeking disqualification and the focus of the Court’s inquiry must be on the precise nature of the relationship between the present and former representations.
 
 Duncan v. Merrill Lynch,
 
 646 F.2d 1020, 1028-29 (5th Cir. 1981). Having established the appropriate legal framework, the Court examines the case at bar.
 

 III.
 

 A.
 
 The Scope of the Prior Legal Representation
 

 Initially, the Court must examine the facts which reveal the scope of the prior legal representation of defendants by plaintiff’s counsel. It is not argued that Mr. Harrison or Mr. Cook ever represented defendants, so the focus is upon Mr. Crumbley.
 

 Mr. Crumbley became an assistant county attorney for Henry County on March 23, 1979, and was elevated to county attorney on May 21, 1979, Deposition of Crumbley at 20-21, a position he held until January 1981, Exhibit B to defendants’ brief. As county attorney, Mr. Crumbley was called upon to represent the county Board of Commissioners, Clerk of Court, Probate Judge, Tax Assessors, and Sheriff. Deposition of Crumbley at 23-24. During this period Mr. Crumbley, in association with Mr. Harrison, represented Jerry Banks, plaintiff’s deceased, against the State in his efforts to be freed from prison. Between 750 and 1000 hours were devoted by Mr. Crumbley to Banks’ case. Affidavit of Crumbley at ¶ 3.
 

 The bulk of Mr. Crumbley’s county work was done for the Board of Commissioners. Mr. Crumbley’s fee statements to the Board, which are attached to defendants’ brief as Exhibit A, indicate that Mr. Crumbley attended approximately fifty (50) general and special meetings of the Board and defended approximately eleven different suits against the county or county officials. These cases are discussed in Crumbley’s Deposition at 70-76.
 

 Mr. Crumbley’s work for Sheriff Glass, a defendant herein, was limited to 36.25 hours during his tenure as county attorney, an amount which represents only 3.45% of the time he spent on county matters. Affidavit of Crumbley at ¶ 5. The first matter that arose concerning the sheriff for County Attorney Crumbley was the case of
 
 Duffy
 
 v.
 
 Goins et al.,
 
 No. C78-2208A (N.D.Ga.), a civil rights action against Sheriff Glass, the City of McDonough, Georgia, certain of its officers, and Deputy Sheriff Ernest Wise. Henry County was not a named defendant. The complaint in
 
 Duffy
 
 with respect to defendant Glass alleged that Sheriff Glass, acting under color of state law, subjected plaintiff to cruel and unusual punishment and deprived plaintiff of his liberty and the security of his person without due process of law, in violation of 42 U.S.C. §§ 1981, 1983, 1985(2), and 1985(3), and contrary to
 
 *1056
 
 the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. The alleged actions were allegedly motivated by racial prejudice and an intent to deprive plaintiff of equal protection of the law.
 
 Duffy v. Goins,
 
 No. C78-2208A (N.D.Ga.), Complaint at ¶ 33, filed December 27, 1978. Defendant Glass was further alleged to be liable to plaintiff (1) for his failure to adequately train, supervise, discipline, and control defendants Wise and Doe, who were deputy sheriffs of Henry County,
 
 id.
 
 at ¶ 38, and (2) for malicious arrest and false imprisonment in violation of Ga.Code Ann. §§ 26-1308 and 1309.
 

 Mr. Crumbley’s involvement with the
 
 Duffy
 
 case was limited to assisting defendants Glass and Wise in answering interrogatories which were served upon them in 1979. Deposition of Crumbley at 26 — 28. Defendant Glass’ first answers were filed on June 29, 1979, and consisted of denials of any involvement with the arrest of Duffy. Mr. Crumbley’s signature appears on the answers as “attorney for the defendant Jimmy Glass.” Mr. Crumbley’s signature appears only on the second interrogatories to defendant Wise, which asked only three questions, all relative to Wise’s arrest of Duffy. See Wise’s answers, filed June 29, 1979. A second set of interrogatories was served on defendant Glass on August 24, 1979. This set of questions asked defendant .Glass about the conduct of his office inasmuch as it sought to determine whether the sheriff regularly ascertained whether persons were being held in the county jail without legal justification, whether he told Deputy Wise or his jail employee that Duffy could not be arrested for failure to appear in court unless a warrant for his arrest had been issued, and whether the sheriff ever inquired as to whether such a warrant had been issued. Mr. Crumbley signed defendant Glass’ answers to these interrogatories, which were filed September 25, 1979, as well as a pleading entitled “Defendant Glass’ Response to Plaintiff’s Request for Production of Documents” filed the same date. The remaining pleadings in the matter were all signed by either Lowell S. Fine or Robert L. Goldstucker as attorneys for defendants Wise, Doe, and Glass.
 

 Mr. Crumbley’s fee statement dated July 5, 1979, indicates that during June 1979 he spent the following time on the
 
 Duffy
 
 matter: (1) On June 7, Vi hour with Amy Totenberg, plaintiff’s counsel; (2) June 11,
 
 1h
 
 hour with Sheriff Glass; (4) June 26, one hour conference with defendants Glass and Wise; (5) June 26, two hours on
 
 Duffy
 
 case, specific work not recorded. During September 1979, with respect to
 
 Duffy,
 
 Mr. Crumbley spent (1) two hours in conference with Sheriff Glass on September 11 discussing “jail
 
 policies
 
 — Duffy
 
 v. Goins
 
 ”; (2) two hours on September 11 preparing answers to interrogatories; (3) one hour on September 14 preparing interrogatories, and (4) two hours on September 17 preparing interrogatories. The final appearances of the
 
 Duffy
 
 case in Mr. Crumbley’s billings show a conference with Mr. Goldstucker on October 23, 1979, and a one-hour review of proposed stipulations on November 14, 1979. In total, of the 36.25 hours Mr. Crumbley states he spent on matters for Sheriff Glass during his tenure as county attorney, 12 of those hours were spent in defense of Sheriff Glass and a deputy sheriff on a claim that the sheriff improperly supervised his office and jail.
 

 Because Mr. Crumbley saw a theoretical possibility of a future civil lawsuit by his client Jerry Banks against his client Jimmy Glass, he decided in April 1980 that it would be best to discontinue his representation of Sheriff Glass. Affidavit of Crumbley at ¶ 6. He discussed the matter with the Board of Commissioners, informing them that occasions might arise when their legal position would conflict with the sheriff’s position, the Banks case being a case in point. Deposition of Crumbley at 50-55. Sheriff Glass was authorized to acquire his own attorney at county expense, and he hired Rod Meadows in April 1980. Deposition of Crumbley at 57-59. Mr. Crumbley later shared office facilities with Mr. Meadows during the period of time he represented Banks
 
 and
 
 Henry County and Mr. Meadows represented Sheriff Glass, although Mr. Crumbley insists he and Mr. Meadows never
 

 
 *1057
 
 discussed Mr. Meadow’s representation of the sheriff. Affidavit of Crumbley at ¶ 7.
 

 Having summarized the past activities of Mr. Crumbley in his representation of Sheriff Glass and Henry County, Georgia, the Court turns to the second question presented by the substantial relationship test.
 

 B. Reasonable Inferences the Court May Draw As to Whether the Confidential Information Allegedly Given Mr. Crumbley by Sheriff Glass or Henry County Would Have Been Given to Any Lawyer Representing Henry County.
 

 The defendants contend that because Mr. Crumbley’s prior representation of Henry County and Sheriff Glass included his involvement in
 
 Duffy v. Goins, supra,
 
 a section 1983 action brought pursuant to
 
 Monell v. Department of Social Services,
 
 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which statute forms the basis of the potential liability of Sheriff Glass and Henry County in the instant suit, the Court must reasonably infer that confidential information was obtained by Mr. Crumbley that could bear directly on the issues of this case. Defendants contend that due to
 
 Monell’s
 
 limitation of local government liability to “constitutional deprivations visited pursuant to governmental ‘custom’ even though such a custom has not received formal approval through the body’s official decision-making channels,” 436 U.S. at 690-91, 98 S.Ct. at 2035-36, Mr. Crumbley’s prior representation of Sheriff Glass and Henry County specially equips him for proving the polities and customs of Henry County in an unfair manner.
 

 Plaintiff’s response to this contention by defendants is (1) the Board of Commissioners does not establish policy for the Sheriff’s Department; (2) the Sheriff acknowledges that he never sought Mr. Crumbley’s advice concerning any policy at issue herein, and the Sheriff does not oppose Mr. Crumbley remaining as counsel for plaintiff; (3) Plaintiff’s cause of action accrued prior to Mr. Crumbley’s association with the county; (4) The “policy” of Henry County and Sheriff Glass is publicly disseminated and therefore could not be the subject of a privilege; and (5) Defendants have shown no connection between Mr. Crumbley’s prior representation of Sheriff Glass and Henry County and the present case.
 

 Keeping in mind that the Court’s narrow focus is upon the reasonable inferences it may draw as to whether the confidential information concerning policy allegedly given Mr. Crumbley by his former clients
 
 would have been given
 
 any attorney in his position, the Court addresses plaintiff’s five contentions
 
 seriatim.
 
 It is not the Court’s purpose to examine the actual disclosures Mr. Crumbley’s prior clients made to him concerning policy, for the reason for the irrebuttable presumption that such disclosures have been made when the subject of the present adverse representation is related to the former is to protect the lawyer-client relationship.
 
 T. C. Theatre Corp. v. Warner Bros. Pictures,
 
 113 F.Supp. 265, 269 (S.D.N.Y.1953).
 

 The plaintiff’s contention that the Board of Commissioners does not establish policy for the Sheriff is of no moment since the facts as outlined above clearly indicate that Mr. Crumbley was also counsel for the Sheriff for a substantial period of time. The Board of Commissioners is not a defendant in this case, which focuses the Court’s attention on Mr. Crumbley’s prior representation of Sheriff Glass and the policy he set for the county in his elected position.
 

 Plaintiff’s second contention concerning his prior lawyer-client relationship with Sheriff Glass urges the Court to examine that prior relationship, a process that is prohibited by the “substantial relationship” rule. The “substantial relationship” rule “rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation. The court may not even inquire as to whether such disclosures were in fact made or whether the attorney in fact is likely to use the damaging disclosures to the detriment of
 
 *1058
 
 his former client.”
 
 In Re Yarn Processing Patent Validity Litigation,
 
 530 F.2d 83, 89 (5th Cir. 1976). Plaintiff’s contention that Sheriff Glass does not oppose Mr. Crumbley remaining as counsel for plaintiff merits the Court’s consideration, however, for consent by a former client to the employment of an attorney by an adverse party prevents disqualification.
 
 Id; Consolidated Theatres v. Warner Bros. Circuit Management Corp.,
 
 216 F.2d 920, 926 (2d Cir. 1954).
 

 Plaintiff argues that in his deposition Sheriff Glass consented to Mr. Crumbley’s representation of plaintiff when, in response to Mr. Crumbley’s question as to whether he had objections to Mr. Crumbley’s participation in this case as counsel for plaintiff, Sheriff Glass stated: “I really don’t know how to answer your question, because I’m not that legally oriented and I don’t know that much about the law, but in my professional opinion — I don’t have a professional opinion, rather; but in my opinion, a lawyer can represent whoever he desires and whatever client that chooses his services, .he certainly has a right to represent him in his way.” Deposition of Glass at 5-6. As to Mr. Crumbley’s question as to whether the motion to disqualify was brought at the sheriff’s request, the sheriff refused to answer pursuant to his counsel’s advice.
 
 Id.
 
 at 6.
 

 The Court finds the statement made by Sheriff Glass indicates a total lack of understanding by the sheriff of the Code of Professional Responsibility. The sheriff’s “consent” to Mr. Crumbley’s representation of plaintiff exists, if at all, without any knowledge by Sheriff Glass of his right not to consent. Such a “consent” is no consent at all.
 

 In any event, the Court is persuaded that because counsel for all defendants, including Henry County, has made the motion to dismiss, the current members of the Board of Commissioners, none of whose consent is on record, support the bringing of the motion. Those commissioners must appropriate the monies for insurance premiums on any policy which might pay plaintiff if her suit is ultimately successful in her claim against the county or must appropriate the monies to pay actual damages should her recovery exceed policy limits. Ga.Code Ann. § 23-1603 (1971). Their opposition to Mr. Crumbley’s representation of plaintiff, through counsel, defeats plaintiff’s second contention listed above.
 

 Plaintiff’s third contention is that Mr. Crumbley was not county attorney when Sheriff Glass hired the defendant deputy sheriff who committed the alleged constitutional tort, a fact which plaintiff argues should defeat defendants’ motion. This argument fails to convince the Court of Mr. Crumbley’s isolation from the Sheriff’s Department policies since the alleged constitutional violations of concealing relevant exculpatory evidence concerning the murders with which Banks was charged were continual.
 
 See
 
 Complaint at ¶ 31. The alleged facts on which plaintiff bases her claim in this action have yet to be publicly disclosed by the defendant government officials which is allegedly due, in part, to defendant Glass’ failure to discipline the defendant deputy sheriffs.
 
 See
 
 Complaint at ¶ 31(c). Thus, plaintiff’s third argument is without merit.
 

 Next, plaintiff contends Mr. Crumbley could not have learned the “policy” of Henry County and Sheriff Glass by way of confidential communications because “policy” of a governmental entity is publicly disseminated pursuant to Ga.Code Ann. §§ 23-802 and 40-2701 et seq. While those provisions of the Code of Georgia require public meetings of the governing bodies of all municipalities and counties with the exception of executive sessions held before or after said public meetings (Ga.Code Ann. § 23-802) and require open governmental records (Ga.Code Ann. § 40— 2701), they do not provide for the open and affirmative disclosure of a county official’s communications with his attorney or for the disclosure by a county sheriff of his policies with respect to training his deputies. The plaintiff’s argument that “open government” negates the existence of the attorney-client privilege as to matters discussed between county officials and county attor
 
 *1059
 
 ney is meritless.
 
 See
 
 Ga.Code Ann. §§ 38-1605 and 38-419 (1981) (establishing attorney-client privilege with no such exception).
 

 Finally, the Court considers plaintiff’s contention that defendants have failed to show any connection between the many discussions, meetings, and lawsuits participated in by Crumbley during his representation of Sheriff Glass and Henry County and the present case. This contention speaks not to the second task for the Court outlined above, but to the third, i.e., whether the confidential information allegedly given is relevant to the issues raised in the litigation pending against the former client.
 

 C. Whether the Confidential Information Allegedly Given Is Relevant to the Issues Raised in the Litigation Pending Against the Former Client.
 

 The Court’s third inquiry is fairly straightforward. That which must be determined is whether the information Mr. Crumbley might have received from Sheriff Glass during his representation of him is relevant to the plaintiff’s present suit against Sheriff Glass and Henry County. Crumbley was involved in the defense of a section 1983 suit against Sheriff Glass,
 
 see Duffy v. Goins et al., supra,
 
 in 1979 for constitutional error in the operation of the Sheriff’s Department. The plaintiff’s instant suit is based upon section 1983 and
 
 Monell, inter alia,
 
 alleging similar grounds for recovery. It is clear, therefore, that the confidential information that Mr. Crumbley might have received in the prior representation of the sheriff and county is relevant to the issues raised in the litigation pending against the sheriff and county.
 

 The Court’s three-pronged inquiry being concluded, it appears to the Court that under the analysis employed above Canons 4 and 9 of the A.B.A. Code of Professional Responsibility prevent Mr. Crumbley from representing the plaintiff in this matter. Accordingly, defendants’ motion to disqualify Mr. Wade M. Crumbley as counsel for plaintiff in the above-styled matter is hereby GRANTED.
 

 IV.
 

 Defendants’ challenge to the continued representation of plaintiff by Mr. Harrison rests upon the following facts: (1) Mr. Crumbley and Mr. Harrison began to jointly represent Jerry Banks in 1978 (Deposition of Crumbley at 40-41); (2) Mr. Crumbley and Mr. Harrison shared office space, expenses, and a> secretary from April 1979 until April Í980 (Deposition of Crumbley at 6-8); (3) Mr. Crumbley and Mr. Harrison
 
 presently
 
 share an office for the practice of law (Crumbley’s deposition at 15-16).
 

 The challenge of defendants rests principally on the third fact above and is based on Disciplinary Rule (DR) 5-105(D) which states:
 

 If a lawyer is required to decline,employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment.
 

 241 Ga. at 694. DR 5-105(D) as approved by the Georgia Supreme Court differs from DR 5-105(D) as proposed by the A.B.A. in that the A.B.A.’s rule disallows a partner or associate when his partner or associate is required to withdraw under
 
 any
 
 disciplinary rule, rather than just DR 5-105. The A.B. A.’s broader rule is not applicable to Mr. Harrison, and since the Court’s disqualification of Mr. Crumbley rests upon Canons 4 and 9 and not DR 5 — 105, DR 5 — 105(D) is not grounds for the disqualification of Mr. Harrison even if he could be considered an associate of Mr. Crumbley’s.
 
 [1]
 

 
 *1060
 
 Plaintiff is correct that the courts have abjured a
 
 per se
 
 approach to the disqualification of co-counsel of disqualified counsel and should not presume disclosures of confidences by the disqualified former counsel where no attorney-client relationship has ever existed between the moving party and co-counsel to the disqualified attorney.
 
 Brennan’s, Inc. v. Brennan's Restaurants, Inc.,
 
 590 F.2d 168, 174 (5th Cir. 1979). Consequently, Mr. Harrison should not be disqualified unless the movant has proved that he learned from Mr. Crumbley information the defendants had intended not be disclosed to the plaintiff.
 
 Id.; see also Duncan v. Merrill Lynch, Pierce, Fenner & Smith,
 
 646 F.2d 1020, 1028 (5th Cir. 1981) (burden of proof in disqualification matter is on movant). The Court’s focus, therefore, turns to what information defendants have shown Mr. Harrison learned from Mr. Crumbley during their association as co-counsel in this matter.
 

 Defendants’ brief explains that Mr. Crumbley and Mr. Harrison were principally responsible for drafting the complaint in this action and formulating the legal theories and causes of action set forth therein. Deposition of Crumbley at 65-66. In their joint representation of Jerry Banks since 1978, Mr. Crumbley confirms that he and Mr. Harrison have discussed this case a great deal and that they have withheld no information concerning the case from one another. Deposition of Crumbley at 68-69. On the basis of these statements defendants contend that any confidential information available to Mr. Crumbley has undoubtedly been shared with or will be shared with Mr. Harrison.
 

 The Court cannot find that the defendants have met their burden of proof as outlined in
 
 Brennan’s.
 
 The Court may not presume disclosures of confidences to co-counsel and the statements made by Mr. Crumbley in his deposition point to no such specific disclosures. In addition, Mr. Harrison states, by affidavit filed August 31, 1981, that he has never received any information from Mr. Crumbley concerning any issue in the above-styled case which carried the slightest indicia of its having been obtained by him in an attorney-client relationship with any of the defendants herein or with any official of Henry County. Affidavit of Harrison at ¶ 4. Defendants having failed to meet their burden as to Mr. Harrison, their motion for disqualification with respect to him is hereby DENIED.
 

 V.
 

 Finally, the Court examines the motion to disqualify Mr. Bobby Lee Cook as co-counsel for plaintiff. The legal tests applicable to Mr. Harrison are likewise applicable to Mr. Cook, as it is not alleged that he ever represented any of the defendants herein.
 

 Mr. Cook was not involved in this case as counsel for plaintiff until approximately a week to ten days prior to the filing of the complaint. On that day Mr. Crumbley and Mr. Harrison traveled to Mr. Cook’s office in Summerville, Georgia, and spent about three hours summarizing the facts of the case for Mr. Cook. The discussion was general and did not include a review of the files of Messrs. Crumbley and Harrison by Mr. Cook. A few days later, after Messrs. Crumbley and Harrison drew the complaint for plaintiff, they returned to Summerville at which time Mr. Cook read and signed the complaint. Deposition of Crumbley at 67.
 

 On the basis of the above, defendants contend they have met their burden of proving that Mr. Cook learned from Mr. Crumbley information the defendants had intended not be disclosed to the plaintiff. To the contrary, plaintiff contends that the three hour discussion referenced above does not establish that confidences were actually communicated, an argument with which the Court is inclined to agree. Defendants have clearly failed to point to any specific information Mr. Crumbley disclosed to Mr. Cook which they had intended not be dis
 
 *1061
 
 closed as a result of their previous attorney-client relationship with Mr. Crumbley. As a result, defendants’ motion to disqualify Mr. Cook is DENIED.
 

 CONCLUSION
 

 The Court has conducted a sifting analysis of the facts, the law, and the questions presented by defendants’ motion to disqualify all three of plaintiff’s attorneys. The result is that Mr. Crumbley is disqualified and Messrs. Harrison and Cook are not. The Court has made these holdings with consciousness of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant’s right to freely chosen counsel.
 

 [1]
 

 . While Fifth Circuit decisions have relied upon the A.B.A. Code of Professional Responsibility in reviewing motions for disqualification of counsel, the court’s references to the A.B.A. Code have not precluded this Court’s reliance on the Code as adopted by the Supreme Court of Georgia and made applicable to members of the State Bar of Georgia, an integrated bar.
 
 See Woods v. Covington County Bank,
 
 537 F.2d 804 (5th Cir. 1976) (Code carries great weight). Because the Code as adopted by the Supreme Court of Georgia is the general guide of ethical standards by which Georgia lawyers must conduct themselves, 242 Ga. at 651, for this Court to impose upon Georgia lawyers the standards of the A.B.A. Code when inconsisten
 
 *1060
 
 cies arise would place Georgia attorneys in a delicate situation. Consequently, the Code of Professional Conduct as adopted by the Supreme Court of Georgia governs the conduct of members of the State Bar of Georgia practicing before this Court.