## 47739. WALTERS v. THE STATE.

Stolz, Judge. The defendant appeals from his conviction of voluntary manslaughter, his sentence to one year's imprisonment, and the overruling of his amended motion for a new trial. *Held:*

1. The evidence authorized the verdict.
2. The defendant seeks a new trial on the basis of newly discovered evidence. Ruth Atcher of Millen, Georgia, read an account of the trial and the defendant's conviction in a newspaper. Subsequently, she gave the following affidavit in which she related an eye-witness account of the events that transpired: "I, Ruth Atcher, left my home near Millen, Georgia, on Friday night, July 31, 1970, to visit relatives in Jacksonville, Florida. I was traveling alone on U. S. No. 25 and No. 301. I reached Ludowici, Georgia, between 11:00 p. m. and 11:30 p. m. I stopped for the red light there. My attention was drawn by two men in a red Volkswagon [sic] directly across the street. (Being hot weather and I don't have an air conditioner, my windows were down.) There was a bearded man hanging out the door on the passenger's side and he was cursing some people in a blue and white car behind them. They seemed to be talking to someone in another blue car stopped close to the light. The light changed, but due to the disturbance I didn't make my turn. The red Volkswagon [sic] came through the light and parked on the right side of the street by a restaurant. The blue and white car turned then and went on south toward

Jesup; and I saw two people in the car. A woman was driving and a man sitting on the passenger side. As the blue and white car passed the Volkswagon [sic], the boys in the Volkswagon [sic] cursed the people in the blue and white car, waving to them like they wanted them to stop; but the blue and white car kept on going south. The Volkswagon [sic] pulled out from the restaurant and passed me on my right side, the driver cursing me to 'get the hell out of the way.' I then slowed down to approximately 10 m. p. h. They chased the blue and white car down, and pulling up on the right side, they hit the front of the blue and white car on the right side. I was then pretty close behind them and I could still hear lots of cursing from the Volkswagon [sic]. Then I saw the driver of the Volkswagon [sic] stick his arm out of the window and I saw something black in his hand. I thought it was a pistol. Then I heard three or four shots; or I presume it was shots. I was so scared by then and there was no one else on the road, so I turned my car around in the middle of the four lane highway and started back north. I was so near Hinesville, Georgia, where a long time friend lives and I went to her house and stayed there until Saturday morning and left to go on to Jacksonville, then. /s/ Ruth Atcher."

The rules relating to the grant of a new trial based on newly discovered evidence are: (1) that the evidence has come to the knowledge of the moving party since the trial; (2) that it was not owing to the want of due diligence that the moving party did not acquire it sooner; (3) that it was so material that it would probably produce a different verdict: (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. See *Bell v. State,* 227 Ga. 800, 805 (183

SE2d 357), quoting *Burge v. State,* 133 Ga. 431, 432 (66 SE 243); also, *Pace v. State,* 121 Ga. App. 251, 252 (173 SE2d 464).

Requirements 1, 2, 5, and 6 are squarely met, leaving only requirements 3 and 4 for our resolution. While certain portions of the affidavit were cumulative to evidence from other witnesses (the delay and cursing at the traffic light prior to the cars' moving through the intersection), the bulk of the affidavit amounts to an eyewitness account of the *entire* transaction by a party not involved in the occurrence. It is true that the defendant, in his unsworn statement, related much of what was contained in the affidavit. But the defendant's unsworn statement *is not evidence.* See *Drury v. State,* 211 Ga. 888, 890 (89 SE2d 513); *Dixon v. State,* 12 Ga. App. 17 (4) (76 SE 794); *Roberson v. State,* 12 Ga. App. 102 (2) (76 SE 752); *Bragg v. State,* 15 Ga. App. 623 (4) (84 SE 82).

The affidavit of Ruth Atcher not only contains material facts which were not in evidence, but her sworn testimony at a subsequent trial to the facts contained in her affidavit will provide testimony of a higher and different grade than the defendant's unsworn statement. The newly discovered evidence is not cumulative. *Johnson v. State,* 196 Ga. 806 (2) (27 SE2d 749) and cit.

The sole remaining criterion is number (3), that the evidence is so material that it would probably produce a different result. "It must be recognized at the outset that this cannot be reduced to a mathematical probability, since the jurors are the ultimate judges of the credibility of witnesses and no prognostication of their reaction to such evidence can be completely accurately made. The fact that we have held hereinabove that the verdict was authorized by the evidence adduced at the trial in no way precludes the probability of a different verdict on another trial with

the newly discovered evidence, since the evidence merely *authorized,* but did not demand the verdict, and this was before this vital, newly discovered evidence . . . was before the jury." *Bell v. State,* 227 Ga. 800, 807, supra.

The trial court erred in failing to grant a new trial based on newly discovered evidence.

3. "A person is not justified in using force under the circumstances specified in paragraph (a) of this section if he . . . (2) is attempting to commit, committing, or fleeing after the commission of a felony; . . ." Code Ann. § 26-902 (b) (Ga. L. 1968, pp. 1249,1272). This provision takes the defense of justification away from one who threatens or uses force while committing or attempting to commit a felony (as rape, robbery, etc.) or while escaping after committing or attempting to commit a felony. See Committee Note to Code Ann. § 26-902 (b) (2).

There was no evidence adduced at the trial which would make Code Ann. § 26-902 (b) applicable. In order to bring the case within the provisions of Code Ann. § 26-902 (b), it is essential that the person committing the homicide be engaged in some other felony (even a homicide) so distinct as not to be an ingredient of the particular homicide in question. Thus, if the shooting in this case had taken place while the defendant was attempting to rob the deceased, or was attempting to escape after attempting to rob the deceased, Code Ann. § 26-902 (b) would be applicable. Under the evidence in this case it was not. The charge of Code Ann. § 26-902 (b) was at least unsupported by the evidence and inapplicable; at most, it effectively negated the defense of justifiable homicide relied on by the defendant. It was harmful to the defendant and improper.

4. At the conclusion of the evidence, the defendant submitted several written requests to charge to the court, some of which were given, but the following

request was denied: "I charge you further, gentlemen, that an apparent danger is justified as effectual for the purpose of defense as a real danger and the defendant is to be judged in the light of these circumstances as they appeared to him acting as a reasonably courageous man at that time and under such circumstances, and you will from the evidence produced, determine whether or not the actions of the deceased and his companion who was riding in the car with him on that night and the pointing of a pistol, if you find that the pistol was pointed at the defendant by the deceased or his companion at the time and place of the killing, constituted such an apparent danger as would cause a reasonably courageous man to shoot another in the defense of himself, his wife and his minor child."

The trial court's basis for failure to give the request was that it was repetitious and was covered by other requests. A careful review of the entire charge leads us to conclude that the trial court was correct in holding that the substance of the request was contained in the charge and hence the failure to give the request was not reversible error.

5. The appellant contends that the following charge given by the trial judge erroneously placed a burden upon the defendant, requiring an explanation of flight: "Gentlemen of the jury, the State in this case has introduced evidence which it contends shows flight on the part of the defendant. Now, you may consider such evidence only as a circumstance in this issue of the guilt of the accused. Flight, if any, if shown may be explained by the defendant and shown to be entirely consistent with his innocence. It is for you to determine whether any flight has been proven and, if so, whether it was done with a sense of guilt or for some other reason. If it was for any other reason except a consciousness of guilt, no inference harmful to the

defendant should be drawn." Substantially, similar charges have been approved by our courts. *Kalb v. State,* 195 Ga. 544, 550 (25 SE2d 24); *Woodruff v. State,* 204 Ga. 17 (1) (48 SE2d 885). Although the charge did place a burden of explaining the flight, if any, on the defendant, such burden was not erroneously placed, nor was the defendant deprived of the opportunity of explanation.

6. The appellant contends that the trial court erred in failing to charge the jury as to their duty not to discuss the case or to communicate with anyone concerning the case during three recesses and at the conclusion of the first day's proceedings. A jury in a criminal case must be kept *together* until the conclusion of the trial unless counsel for both the state and the accused agree otherwise. *Atlanta Newspapers v. State of Ga.,* 216 Ga. 399, 404 (116 SE2d 580). "If, during the trial, the jury is allowed to *disperse,* it is the duty of the court to instruct the jury not to discuss the case among themselves or with anyone else or to permit anyone to discuss it with them, not to read newspaper articles about the case, and not to listen to radio or television reports concerning the case during the recess of the court." (Emphasis supplied.) *Atlanta Newspapers, Inc.,* supra, (4b). At no time during the trial was the jury allowed to disperse. During all recesses they were kept together under the custody of the bailiff. Furthermore, even assuming that it was incumbent on the trial judge to so charge the jury even when they were to be kept together, the defendant's counsel, who was present at all such times, did not object to such failure or request any such instructions and thus waived this irregularity or impropriety by his failure to immediately call the judge's attention thereto, so that the judge could either so charge, or refuse to charge. See *Swain v. State,* 162 Ga. 777 (6) (135 SE 187); *Chandler v. State,* 219 Ga. 105, 114 (131 SE2d 762) and cit.; *Butts v. Davis,* 126 Ga. App.

311 (8) (190 SE2d 595) and cit. The case of *Allen v. State,* 194 Ga. 178, 181 (21 SE2d 73), is not authority for the contrary, since it involves an affirmative act of commission prohibited by statute, rather than an act of omission, apparently not required.

*Judgment reversed. Pannell, J., concurs. Eberhardt, P. J., concurs generally as to all Divisions except Division 6, to which he specially concurs.*

ARGUED JANUARY 11, 1973 — DECIDED FEBRUARY 19, 1973.

*Powell, Goldstein, Frazer & Murphy, Robert W. Patrick, Jerry B. Blackstock,* for appellant.

*J. Max Cheney, District Attorney, Billy N. Jones,* for appellee.

EBERHARDT, Presiding Judge, concurring. I concur in the judgment and in the rulings made in Divisions 1, 2, 3, 4 and 5. I concur in the result as to Division 6 because it appears that there was no dispersion of the jury, hence no occasion for instructing them to refrain from discussing the case or communicating with others. No harm for failure to give the instruction is shown, and even if it were error it was not cause for a new trial.