## 55455. LEE v. THE STATE.

Smith, Judge.

The appellant, Randy Lee, was indicted for murder. At trial, he defended on the basis of self-defense, but the jury convicted him of voluntary manslaughter. He contends, in part, that newly discovered evidence was material and substantial to the justification defense, and therefore a new trial should have been granted. We agree that the denial of the motion for new trial was error, and the judgment of conviction is reversed.

I. The Evidence

At trial, Lee testified in his defense and offered the following version of the killing:

Upon exiting from a commercial driveway onto Godby Road in Fulton County, Lee apparently pulled out in front of a vehicle driven by the deceased, James Barksdale. Barksdale pulled up close behind Lee and began blowing his horn, and shortly thereafter pulled around Lee's vehicle and veered sharply in front of him. Lee in turn blew his horn at Barksdale, and Barksdale then slammed on his brakes, forcing Lee to come to an abrupt halt as well. Barksdale, carrying a pistol sheathed in a holster, exited his car and walked back toward Lee's car. Lee testified that he was scared and nervous, and that

he and Barksdale engaged in a heated argument for some time. During this argument, Lee remained seated in his car, and Barksdale eventually walked forward toward his own car, where he turned and faced Lee in what Lee perceived to be a menacing manner. Lee says that because of his fear all he wanted was for the incident to end, so he pulled around the left side of Barksdale's car in order to leave. As he pulled alongside, Barksdale said something to Lee, and Lee stopped and leaned over to roll down the window on the passenger side of the car. Lee contends he was going to apologize for the misunderstanding and leave, but as he rolled the window down Barksdale began to bend down and raise his gun simultaneously. Lee says that he reached under the arm rest of his car, retrieved his own pistol, shot Barksdale, and fled in panic. The next day, he contacted an attorney and surrendered.

The state contended that the argument had ended and that Lee unjustifiably shot Barksdale as Lee drove from the scene. The state's evidence showed that Barksdale had been a Fulton County deputy sheriff. Although Barksdale was carrying a pistol and holster at the time of the incident, he was not discernible as a peace officer; he was wearing sweat pants, a T-shirt and tennis shoes.

Several eyewitnesses testified and gave slightly varying accounts of the shooting. Some could not see Barksdale clearly enough to know whether he had raised his pistol at Lee, and others testified that Barksdale did not raise his gun prior to being shot. One testified that Lee's car pulled up next to Barksdale and stopped only momentarily before speeding off; another testified that when Lee pulled up alongside Barksdale a second argument ensued, lasting at least thirty seconds. One witness testified that Lee shot Barksdale in the back.

Experts for the state testified that Barksdale had been shot from the front at least three times. Powder burns on Barksdale's left hand tended to indicate that that hand had been positioned approximately one foot from Lee's pistol when the shots were fired. (Barksdale's right hand held the holstered revolver throughout this incident; some state eyewitnesses testified quite positively that prior to being shot Barksdale never raised

either his left or his right hand.)

As is typical following any precipitous event, there are as many accounts of the event as there were eyewitnesses. And it is clear that the jury was struggling to reach a determination of the true chronology of circumstances; the jury twice asked for clarification of the law and then reported a deadlock, before finally returning a verdict of guilty of voluntary manslaughter. It is in this context of closely divided evidence that we face the issue of the newly discovered evidence.

## II. The Newly Discovered Evidence

The appellant presented three affidavits to the trial court. One was signed and sworn to by John Barneycastle, who claims to have been an eyewitness to the shooting, and described the event as follows: Lee's car pulled around Barksdale's car "and as the car approached [Barksdale] he crouched over and swung around to his left and he had a gun in his hand and just as the automobile drived by [Lee] came up along side of him he had both hands on his weapon and was pointing it toward [Lee] in what I would refer to as a 'firing position,' that is with both hands on the gun and in a crouched position aiming it in through the window of the car driven by [Lee]." Mr. Barneycastle further swore that he gave his name and address to the police, but they declined to take his statement and told him he would be contacted later. He heard no more about the incident until he by chance discovered the identity of Lee and heard that Lee had been convicted. At that time, Barneycastle contacted Lee's attorney.

The second affidavit, executed by Mr. Barneycastle's wife, verifies that she and her husband were present near the scene, but she was not herself an eyewitness to the shooting.

The third affidavit was supplied by Lee's trial counsel. He averred that he was not aware of the existence of John Barneycastle, that he had filed the proper motion which would have required the state to reveal Barneycastle's existence, and that, in his professional opinion as an experienced trial lawyer, Barneycastle's testimony would have resulted in Lee's acquittal.

## III. Analysis

This court has looked to six factors to determine

whether newly discovered evidence mandates a new trial. The requirements are: "(1) that the evidence has come to the knowledge of the moving party since the trial; (2) that it was not owing to the want of due diligence that the moving party did not acquire it sooner; (3) that it was so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." *Walters v. State,* 128 Ga. App. 232, 233 (196 SE2d 326) (1973). We find the presence of these six factors in this case.

As in the *Walters* case, "[r]equirements 1, 2, 5, and 6 are squarely met, leaving only requirements 3, and 4 for our resolution." Id. p. 234.

(a) *Was the evidence so material that it would probably produce a different verdict?* The jury, with the evidence before it, encountered difficulty in reaching its verdict. This difficulty arose even though none of the eight testifying eyewitnesses supported the appellant's testimony to any great degree. It may very well have been that the jury would have believed the appellant's version of the facts if only one of the eyewitnesses had offered a version of the facts congruent with the appellant's version.

We do not know if the jury was wavering on the question of whether the homicide was either murder or manslaughter, or instead, if it was hung on the question of whether it was manslaughter or justifiable homicide. If this latter question was the problem, then it seems very likely that Barneycastle's unequivocal recollection of the incident, strongly corroborative of Lee's own account, would have swayed the balance toward acquittal. We think the newly discovered evidence, under the facts of this case, was as important as the newly discovered evidence discussed by the Supreme Court in *Banks v. State,* 235 Ga. 121, 124 (218 SE2d 851) (1975). As the *Banks* opinion stated, "under the facts of this case we think it was highly important to the theory of the defendant's case that the testimony of the [witness] should have been made available to the jury."

(b) *Was the newly discovered evidence more than cumulative only?* The state contends that Barneycastle's testimony would be merely cumulative of the appellant's own testimony. In earlier cases where a witness' testimony tended to track the unsworn statement of the defendant, that testimony was held not cumulative because the unsworn statement was not to be considered as evidence. E. g., *Moore v. State,* 113 Ga. App. 197 (147 SE2d 675) (1966); *Walters v. State,* 128 Ga. App. 232, supra. In this case the defendant's testimony was, of course, sworn, but we think the same result is reached for a different reason. Testimony is not cumulative, even though it may be very similar to other evidence, if it is of a higher and different grade from the other similar evidence. *Johnson v. State,* 196 Ga. 806 (27 SE2d 749) (1943). Thus, in *Banks v. State,* 235 Ga. 121, supra, testimony from the later-discovered witness was apparently not cumulative, even though it was substantially the same as the defendant's own testimony, because it provided support for the defendant's theory, support which otherwise was completely lacking in the case.

In this case, there was no eyewitness account which was able to support the appellant's contention that he fired only after the victim's gun was raised against him. Barneycastle's eyewitness account is therefore not cumulative.

## IV. Conclusion

For the above reasons, the trial court erred in refusing to grant the appellant a new trial. The remaining enumerations of error in the appeal either are meritless or else address themselves to problems unlikely to occur on retrial.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED MARCH 1, 1978 — DECIDED
JUNE 12, 1978.

*O'Connor, Dietrick & Klein, Paul T. O'Connor, Paul A. Dietrick, J. M. Salome,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Donald J. Stein, Isaac Jenrette, Assistant District Attorneys,* for appellee.