A93A1800. LOGAN v. THE STATE.
(442 SE2d 883)

McMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of rape, aggravated sodomy, kidnapping with bodily injury, aggravated assault, and simple battery.

At trial, the victim testified that in the early morning hours of December 17, 1988, she was working as a taxi cab driver when defendant approached her for a ride; that she drove to several sites in compliance with defendant's requests (purportedly to locate a friend) and that defendant then pulled a knife, instructed her to drive to a remote area and forced her to engage in sodomy and intercourse. Defendant testified that he engaged in consensual sex with the victim pursuant to her solicitation; that he ejaculated during copulation over the victim's objection; that he gave the victim $20 after the encounter and that the victim then gave him a card with her name and number for future reference.

This appeal followed the denial of defendant's motion for new trial. *Held*:

1. In his first four enumerations of error, defendant contends the trial court erred in applying the Rape Shield Statute, OCGA § 24-2-3, to preclude him from testifying as to certain statements the victim uttered shortly before the incident which forms the basis of the crimes charged.

Prior to trial, the trial court held an in camera hearing pursuant to OCGA § 24-2-3 where defense counsel stated that he intended to

produce testimony that the victim engaged in prostitution before the alleged rape. The trial court, noting that defendant had no knowledge of this alleged act of prostitution by the victim, ruled that such evidence was inadmissible under the Rape Shield Statute as amended July 1, 1989, or under the statute as it existed prior to the amendment. The trial court held a second in camera hearing immediately before the trial wherein defendant proposed to testify concerning statements the victim allegedly uttered in his presence concerning her past sexual conduct. Defendant argued that these statements led him to believe that the victim consented to sex. Specifically, defendant sought to introduce that the victim told him that she knew all the black men in the community because of her occupation; that she lived with a number of black men; that her husband left her because she had been involved with these men; that she had three children by black men; that "she had been corresponding with the black guys and that they was abusing her in ways and that she wasn't getting what she deserved"; that she wasn't making much money on her job and that she did not want to get pregnant anymore.

Noting that some of the proffered testimony did relate to the victim's past sexual behavior, the trial court ruled that any statements which the victim uttered concerning her marital history, general reputation of promiscuity, chasteness, or sexual mores contrary to community standards were excluded by the Rape Shield Statute. Specifically, the trial court ruled that the victim's alleged statement that she did not want to have any more children was inadmissible because it was proof of sexual conduct unrelated to the crimes charged. However, the trial court ruled that the victim's alleged statement that she did not want to get pregnant was admissible. It appears from a review of the record that the only aspects of defendant's proffered testimony that he did not subsequently testify to before the jury were that the victim had been involved with black men, that she had children by black men and that her husband had left her.

(a) Relying on *Villafranco v. State*, 252 Ga. 188 (1) (313 SE2d 469), defendant first argues that the victim's statements to him are not evidence of past sexual behavior within the purview of the Rape Shield Statute but are evidence of both her state of mind at the time of the alleged rape and her motive to fabricate a rape charge against him because he was another black male who had abused her by virtue of ejaculating inside of her after she asked him not to and by only paying her $20. This contention is without merit.

Although the victim's statements to defendant about her having had sexual relations with black men and having had children by these men would otherwise be admissible as part of the res gestae, it is well settled that the "Rape Shield Statute, OCGA § 24-2-3, supersedes all evidentiary exceptions, including the res gestae rule." *Veal v. State*,

191 Ga. App. 445, 447 (4) (382 SE2d 131); *Johnson v. State*, 146 Ga. App. 277, 281 (246 SE2d 363). Defendant's reliance on *Villafranco*, 252 Ga. 188, 193 (1), supra, is misplaced because in that case the victim's statement that she wanted "to get some nookey" did not refer to past sexual conduct but to the victim's present state of mind. Accordingly, the Rape Shield Statute applies to the proffered testimony.

(b) Next, defendant contends the trial court erred in applying the Rape Shield Statute as amended July 1, 1989, because he committed the alleged offense in December 1988. Defendant argues that the amendment to subsection (b) of the statute violates the ex post facto clause because it deprives him of the substantive right to introduce evidence that was admissible under the prior version of subsection (b).

Prior to July 1, 1989, the Rape Shield Statute excluded evidence of past sexual behavior of the complaining witness unless the court "finds that the past sexual behavior directly involved the participation of the accused *or* finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of. . . ." (Emphasis supplied.) OCGA § 24-2-3 (b). The 1989 amendment substituted the word "and" for "or" such that in order for evidence of past sexual behavior to be introduced under subsection (b), it must directly involve the accused *and* support an inference that he reasonably believed the complaining witness consented.

Generally, statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. OCGA § 1-3-5. However, where a statute governs only procedure, including the rules of evidence, it is to be given retroactive effect. *Polito v. Holland*, 258 Ga. 54 (2) (365 SE2d 273). The rule with respect to the ex post facto clause is that any law enacted after the offense was committed which inflicts a greater punishment or alters the situation of the accused is ex post facto. *Todd v. State*, 228 Ga. 746 (187 SE2d 831). The Georgia Supreme Court addressed a similar issue in *Todd* wherein the defendant challenged as void for retroactivity a change in the law which allowed evidence of his former crimes committed before the effective date of the statute to be introduced at a sentencing hearing after the effective date of the statute. The court found Todd was not deprived of a substantial right, quoting from *Thompson v. Missouri*, 171 U. S. 380, 387 (18 SC 922, 43 LE 204): "We cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced . . . at the time the offense was committed." (Punctuation omitted.) *Todd v. State*, 228 Ga. 746, 751, supra. Given that the case sub judice involves the converse situation, i.e.,

evidence which may have been admissible at the time of the offense is no longer admissible, it appears defendant was not deprived of a substantial right.

In any event, we agree with the trial court that the amended statute was not ex post facto as to the defendant because the evidence he sought to introduce was not admissible under the prior version of subsection (b). Defendant essentially sought to introduce statements the victim made to him about being with other men and having children with such men as evidence that defendant believed the victim consented to have sex with him. This evidence did not directly involve the defendant nor do we view it as a circumstance which would reasonably support defendant's purported view that the victim consented to have sex with him. See former OCGA § 24-2-3 (b). In fact, it is against just such reasoning that Rape Shield laws were enacted. See *Johnson v. State*, 146 Ga. App. 277, 278 (1), 279, supra. We find no merit in this enumeration.

(c) Defendant next argues that the trial court erred in ruling his testimony inadmissible under the amended statute because the testimony is admissible under subsection (c) (2) of the amended statute.[1]

Subsection (c) of the Rape Shield Statute was amended in 1989 to provide an exception for the admission of evidence of past sexual behavior if the court finds that the evidence "is so highly material that it will substantially support a conclusion that the accused reasonably believed that the complaining witness consented to the conduct complained of and that justice mandates the admission of such evidence. . . ." OCGA § 24-2-3 (c) (2). As noted above, the essence of defendant's argument appears to be that the victim's statements to him that she had been with black men before and had children by such men supports the conclusion that he reasonably believed the victim consented to have sex with him. The trial court ruled this interpretation was not a reasonable belief but an inappropriate implication that "if she did it once, she did it again." See *Johnson v. State*, 146 Ga. App. 277, 278 (1), 279, supra. We likewise cannot say that this testimony substantially supports the conclusion that defendant reasonably believed the victim consented nor that justice mandates the admission of such testimony. Accordingly, we find this enumeration to be without merit. See *Concepcion v. State*, 200 Ga. App. 358, 361 (5) (408 SE2d 130).

(d) Defendant next contends the trial court erred in denying his motion for new trial on the ground that OCGA § 24-2-3, as amended in 1989, is unconstitutional. Defendant argues only that if the trial

---

[1] Defendant concedes that the testimony is not admissible under subsection (b) of the amended Rape Shield Statute.

court properly excluded his proffered testimony under the amended statute, the amended version of the statute is unconstitutional and violates his right of confrontation and due process rights.

The Georgia Supreme Court has already established the constitutionality of the Rape Shield Statute. *Harris v. State*, 257 Ga. 666 (1) (362 SE2d 211). See also *Rouse v. State*, 204 Ga. App. 845, 847 (3) (420 SE2d 779). As noted above, the 1989 amendment: (1) substituted the word "and" for "or" in subsection (b) such that the past sexual behavior must now directly involve the accused *and* support an inference that he reasonably believed the complaining witness consented and (2) added to subsection (c) another exception for the admission of evidence of the victim's past sexual behavior. As before, the statute still assists the truth-seeking process by encouraging victims to bring the perpetrators of crimes to justice and still provides protection for the defendant by virtue of the in camera hearing and the inclusion of an additional exception solely for the benefit of the defendant. See *Harris v. State*, 257 Ga. 666 (1), supra. Defendant has made no argument as to how either change in the statute has rendered it unconstitutional and, in the absence of any such argument, we find this enumeration to be without merit.

2. In his next enumeration of error, defendant contends the trial court erred in denying his motion for new trial based on newly discovered evidence that the victim recanted her accusation that defendant committed the crimes charged.

" 'That a material witness for the State, who at the trial gave direct evidence tending strongly to show [the defendant's] guilt, has since the trial made statements (even) under oath that [her] former testimony was false, is not cause for a new trial. (Cits.)' *Fowler v. State*, 187 Ga. 406, 407 (7) (1 SE2d 18) (1939). 'Declarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial. This difference in value must be recognized so long as there has been no conviction of perjury. Provision is made for setting aside verdicts resting on perjury, but there must first be a conviction. (Cit.)' *Brown v. State*, 60 Ga. 210, 212 (1) (1878)." *Williams v. State*, 197 Ga. App. 274 (398 SE2d 381). The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where "there can be no doubt of any kind that [the State's witness'] testimony in every material part is purest fabrication." *Fugitt v. State*, 251 Ga. 451, 452 (1), 453 (307 SE2d 471).

In the case sub judice, Jackie Bonds testified at the hearing on defendant's motion for new trial that the victim informed her two years after defendant's conviction that she falsely accused defendant of rape because defendant only gave her $20 for engaging in consensual intercourse, defendant ignored her request to avoid ejaculation

during copulation so as to minimize the possibility of pregnancy and "she had been having problems with black mens." Bonds testified that she then asked the victim, " 'Well, why did you put [defendant] in jail then,' and [that the victim] responded back and said that she knew he wasn't from this town." On cross-examination, Bonds admitted that she is not well acquainted with the victim; that she has visited defendant regularly (over 20 times) since his incarceration and that she and defendant have discussed defendant's version of the encounter which led to his conviction for rape. The victim testified that defendant raped her in the manner she described at trial and refuted any allegation to the contrary. Specifically, the victim testified that she never recanted her trial testimony; that her relationship with Bonds is antagonistic because of an unrelated domestic matter and that she did not fear pregnancy as a result of ejaculation by defendant during copulation as alleged by Bonds because she was surgically sterile at the time of the rape. This evidence casts great doubt as to whether the victim's trial testimony was of the "purest fabrication" so as to invoke the exception enunciated in *Fugitt v. State*, 251 Ga. 451, 452 (1), supra. Further, since there is no proof that the victim has been convicted of perjury so as to invoke OCGA § 17-1-4, the affidavit and testimony of Jackie Bonds goes only to impeach the victim's trial testimony and therefore does not meet the requirements for granting a new trial based on newly-discovered evidence as set forth in *Timberlake v. State*, 246 Ga. 488, 490 (1) 491 (271 SE2d 792). Consequently, the trial court did not err in denying defendant's motion for new trial based on newly-discovered evidence. See *Ashley v. State*, 263 Ga. 820 (2c) (439 SE2d 914); *McKnight v. State*, 211 Ga. App. 653 (1) (440 SE2d 249).

3. In his fifth enumeration, defendant contends that because "the bodily injury on which his kidnapping with bodily injury conviction was predicated consisted of the rape of which he was also convicted, these two offenses merged, with the result that the sentence of life imprisonment which he received for kidnapping with bodily injury must be vacated. [It appears that the] state concedes that these two offenses merged under the circumstances. See *Allen v. State*, 233 Ga. 200, 203 (210 SE2d 680) (1974). It contends, however, that kidnapping with bodily injury constituted the greater of the two offenses and that it is therefore the 20-year sentence imposed on the rape conviction which should be vacated, rather than the mandatory sentence for kidnapping with bodily injury. See OCGA § 16-5-40 (b). We agree. See *Brown v. State*, 247 Ga. 298 (8) (275 SE2d 52) (1981). [Defendant's] sentence for rape is accordingly vacated. However, the judgment of the trial court is otherwise affirmed." *Gober v. State*, 203 Ga. App. 5, 8 (8) (416 SE2d 292).

4. In his seventh enumeration, defendant contends the trial court

erred in denying his motion for new trial on the grounds that his trial attorney was ineffective for failing to challenge the constitutionality of OCGA § 24-2-3. The enumeration of error is not supported by argument or citation of authority and is thereby deemed abandoned pursuant to Rule 15 (c) (2) of this court. *Snyder v. State*, 201 Ga. App. 66, 69 (8a) (410 SE2d 173).

*Judgment affirmed in part and vacated in part. Birdsong, P. J., Andrews, Johnson and Blackburn, JJ., concur. Pope, C. J., Beasley, P. J., and Cooper, J., concur in part and dissent in part. Smith, J., disqualified.*

BEASLEY, Presiding Judge, concurring in part and dissenting in part.

1. I dissent with respect to Division 1 (a) and that portion of Division 1 (b) which analyzes whether the evidence would be admissible under the old, inapplicable law. I do not join in the conclusions that it would be inadmissible under the old law and is inadmissible under the amended version.

After the defendant's testimony in camera, the court excluded all evidence of what the court described as statements made by the prosecutrix to defendant about her marital history, what she said about sexual things she had done, what she said about nonchastity on her part and her activity related to sexual mores contrary to community standards, her statement about not wanting to have more children, and her statement about having children by others of defendant's race. The court later ruled that he could testify that she said she had children, because she herself so testified at trial.

Thus, the court excised portions of what the prosecutrix allegedly told defendant about herself leading up to a direct exchange about having sex, shortly before their sexual activity. These portions were part of the whole conversation which, defendant urged, in its totality and under the circumstances, had led him to believe she consented. The prosecutrix' statements were offered to show her state of mind and motive at the time of the alleged rape, as a basis for the defendant's belief about her willingness to engage in sex, and also her motive thereafter for claiming she was raped. Her statements would thus relate to the issue of her consent vel non. Defendant's testimony about them was substantive evidence, that is, that type of evidence which the other dissenters would hold entitled defendant to a new trial based on Bonds' newly discovered testimony.

Under both the prior and present rape shield versions, the victim's statements would be allowed to show a basis for *defendant's* belief that there was consent. Such evidence is more circumscribed under the present statute than formerly, however, as it now must be "so highly material that it will substantially support" such a finding

and it must be such that "justice mandates the admission of such evidence." OCGA § 24-2-3 (c) (2).[2] The legislative history of the substantial amendment to OCGA § 24-2-3 is chronicled in 6 Ga. State Univ. L. Rev. 245 (1989).

As to the old law:

In *Johnson v. State*, 146 Ga. App. 277, 279 (1) (246 SE2d 363) (1978), a case cited, defendant wanted to introduce evidence that the victim was not a virgin, to support an inference that he reasonably believed she consented to his advances. Of course that was not admissible under subsection (b). In the first place, defendant offered no evidence that he knew or believed the victim was not a virgin at the time of the encounter with the victim. He wanted others to testify that they had had intercourse with her. *Their* activities, without his knowledge of them at the time of his encounter (even if the two witnesses were truthful), could not possibly create an inference that he could have reasonably believed that she consented.

In the second place, whether she was a virgin or not has zero relevancy to whether she consented or not to intercourse with defendant. There is just no logical tie between the fact that a woman is not a virgin and the question of consent in a given situation. That is, if defendant *had* been permitted to introduce the evidence, it would not have shed light on the issue of consent.

In this case, on the other hand, defendant wished to show the woman's motive and state of mind leading up to the incident, by what she said to him, to explain why he believed she consented. As defendant's counsel put it, he was trying to show that this cab driver, to whom defendant was a stranger, made some very personal disclosures about sexual activities with members of his race, as a come-on. His theory is that she would not discuss such things with this man she picked up unless she had sexual activity in mind. That would be very relevant to the issue of consent because these statements would have supported an inference that the accused could have reasonably believed that she consented to the conduct which then transpired between them. Evidence of consent is one of the exceptions under OCGA § 24-2-3's old subsection (b). *Harris v. State*, 257 Ga. 666, 668 (2) (362 SE2d 211) (1987).

The evidence which defendant sought to introduce came within that exception to the rule of inadmissibility. It would not contravene

---

[2] Compare this evidentiary standard with that which applies to newly-discovered evidence. To warrant a new trial, such evidence must fulfill six requirements, one of which is that " 'it is so material that it would probably produce a different verdict.' " *Spann v. State*, 263 Ga. 336, 337 (3) (434 SE2d 54) (1993). The dissent authored by Cooper, J., in the instant case applies this latter standard to Bonds' testimony and would hold that it meets the standard, as substantive evidence, so as to mandate a new trial.

the statute's shield against the jury's "becoming inflamed or impassioned and deciding the case on *irrelevant* and prejudicial evidence." (Emphasis supplied.) *Harris*, supra at 667 (1) (a). It was relevant to show the context in which she made, according to his testimony, a solicitation. The context created by her other statements to him, if the jury believes she said them, renders more plausible his testimony that she solicited sex and could create a reasonable doubt that he committed the crime charged. As to whether she made these statements about herself, the determination of admissibility does not depend on whether or not the trial court would find defendant's testimony on the subject to be credible.[3]

*Concepcion v. State*, 200 Ga. App. 358 (5) (408 SE2d 130) (1991), cited in the majority opinion, is inapposite. In that case, as pointed out by the court, there was no evidence that defendant had *knowledge* of the alleged prior sexual conduct; this rendered it inadmissible. In this case, defendant's testimony is that the woman *told* him about it, in advance of their sexual contact.

Knowledge of the prosecutrix' past sexual activity which could support a reasonable belief that the prosecutrix consented to the conduct complained of, such as infidelity discussed at the time of the encounter, would be admissible under the prior OCGA § 24-2-3 (b). Lack of such knowledge renders it inadmissible. *Burley v. State*, 190 Ga. App. 75, 78 (2) (378 SE2d 328) (1989); *Moore v. State*, 195 Ga. App. 814 (395 SE2d 13) (1990).[4]

As to the amended, applicable law:

This challenged evidence comes within the exception carved out in OCGA § 24-2-3 (c) (2). In the context and environment in which the alleged statements were made, what defendant testified the prosecutrix said to him about her personal sexual life and the sexual relationships she had had with other men of his race were relevant to his defense of consent.

The majority applies an earlier ruling of this court that the Rape Shield Statute supersedes the res gestae rule. It comes from *Johnson v. State*, 146 Ga. App. 277, 280 (246 SE2d 363) (1978). That case, decided under the old statute, did not involve an effort by defendant to introduce res gestae evidence, so it presents dictum on this subject.

---

[3] The dissent authored by Cooper, J., refers to this same matter of credibility as to Bonds' testimony, in the context of newly-discovered evidence in a motion for new trial. The trial judge is the trier of the facts in deciding motions based on newly-discovered evidence. *Herrin v. State*, 71 Ga. App. 384, 387 (2) (31 SE2d 124) (1944). As to the evidence defendant sought to introduce at trial, however, its credibility and weight would be within the province of the jury.

[4] Although *Moore* was probably decided under the law as amended in 1989, the opinion quotes and applies *Villafranco v. State*, 252 Ga. 188 (313 SE2d 469) (1984), decided under old law.

Moreover, it cites no authority for the proposition. Subsequent cases, such as *Veal v. State*, 191 Ga. App. 445, 447 (4) (382 SE2d 131) (1989), simply apply it.

The nature of the alleged statements, and the setting in which they were said, in this case meet the statutory requirement that the evidence be "so highly material that it will substantially support a conclusion that the accused reasonably believed that [she] consented to the conduct complained of." Because this was defendant's sole defense, "justice mandates the admission of such evidence," which is the second requirement of the statute.

2. The majority, having concluded that the evidence was excludable under the statute, is confronted with a constitutional argument that construing and applying the statute in such a manner renders it unconstitutional. This places the matter squarely within the jurisdiction of the Supreme Court of Georgia. 1983 Ga. Const., Art. VI, Sec. VI, Par. II (1). Defendant raised the issue of constitutionality under the federal Confrontation Clause and due process clause in the trial court, the trial court rejected the claims, and so does the majority here.

This Court's position is that the question was resolved in *Harris v. State*, 257 Ga. 666 (1) (362 SE2d 211) (1987). *Harris*, however, examined the statute before it was amended. The amendments of 1989 further substantially restrict the defendant's evidence. The statute as amended has not yet been subject to Supreme Court scrutiny.

Secondly, *Harris* dealt only with a challenge under the Confrontation Clause, the defendant's Sixth Amendment right "to be confronted with the witnesses against him." It "includes the right to conduct reasonable cross-examination. *Davis v. Alaska*, 415 U. S. 308, 315-316[, 39 LE2d 347, 94 SC 1105] (1974)." *Olden v. Kentucky*, 488 U. S. 227, 231 (109 SC 480, 102 LE2d 513) (1988). In Georgia, a defendant has the statutory right "of a thorough and sifting cross-examination." OCGA § 24-9-64. Defendant Logan never got to the point of cross-examining the victim about her excluded statements, because the statements were excluded before trial.

Thirdly, *Harris* did not deal with a separate due process challenge, which defendant also asserts. To the extent that this is not covered by the Sixth Amendment right to impeach the victim's testimony, he claims that refusing to permit him to testify about the substance of the encounter, on the basis of the statute, in particular those portions of the conversation which he had with the victim which led him to believe she consented to the sex which transpired, deprived him of due process of law. See *Chambers v. Mississippi*, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1973). Thus, *Harris* does not foreclose this issue.

Fourthly, *Harris* did not involve res gestae, or matters which

were an inherent part of the subject incident, but rather the victim's alleged prior sexual history standing alone.

I concur in the remainder of the opinion.

I am authorized to state that Chief Judge Pope joins in this opinion.

COOPER, Judge, concurring in part and dissenting in part.

I respectfully dissent as to Division 2 of the majority opinion since I believe the trial court erred in denying defendant's motion for new trial based on newly discovered evidence. The majority holds that Bonds' testimony does not meet the requirements for granting a new trial because it goes only to impeaching the victim's trial testimony. I disagree based on this court's recent decision in *Humphrey v. State*, 207 Ga. App. 472 (428 SE2d 362) (1993). In *Humphrey*, we held that the defendant's motion for new trial should have been granted based on the newly discovered testimony of the victim's previously unknown roommate that the victim had told the roommate that she had consented to sexual intercourse with the defendant but had changed her mind in the midst of it. We found this evidence admissible not merely to impeach the victim's credibility *but as substantive evidence* tending to establish there had been no rape. Id. at 475. We determined that the roommate's testimony was " 'not cumulative, even though it was substantially the same as the defendant's own testimony, because it provided support for the defendant's theory, support which otherwise was completely lacking in the case.' [Cits.]" Id. As to whether the evidence was so material as to likely produce a different verdict, we held that the trial court, in refusing to grant the new trial motion, "ha[d] seemingly passed upon the credibility of the roommate and ha[d] said, in effect, that a jury could not believe her as a matter of law." (Citations and punctuation omitted.) Id.

Bonds testified that the victim told her the following: she took the defendant to a wooded area and had sex with him, she told him not to "come inside of her because she did not want [any]more [children]," he ejaculated in her anyway and, after they had sex, he gave her $20 to which she responded "this is all you're going to give me after what I gave you?" Bonds also testified that the victim said that she fabricated the rape charge because she knew the defendant was not from there and knew no one in the area. Bonds testified to the same effect at the hearing on the motion for new trial.

Here, as in *Humphrey*, the testimony of Bonds, the later discovered witness, was admissible not merely to impeach the testimony of the victim but as substantive evidence "affirmatively support[ing] the defense claim of consent and fabrication of rape." Id. Bonds' testimony as to why the victim said she fabricated the rape charge was not

previously testified to by any witness. Defendant alone testified that the victim told him not to ejaculate in her, became angry when he had done so, and became more angry when he only paid her $20. While Bonds' testimony was similar to defendant's testimony in this regard, as in *Humphrey*, her testimony was not cumulative because it provided support for the defendant's theory of consent and fabrication which was otherwise lacking. Id.; see also *Lee v. State*, 146 Ga. App. 189 (3) (245 SE2d 878) (1978); *Banks v. State*, 235 Ga. 121 (218 SE2d 851) (1975).

Finally, with respect to whether the submitted testimony was so material as to probably produce a different verdict, I conclude the jury may well have believed defendant's version of the events if it had Bonds' testimony concerning the victim's subsequent admissions before it. However, as in *Humphrey*, the trial court has seemingly passed on Bonds' credibility and said, in effect, that no jury could believe her. See 207 Ga. App. at 475. Because I find the instant case analogous to the situation in *Humphrey* and do not believe Bonds' testimony went only to impeaching the victim's testimony, I would hold that the trial court abused its discretion in denying defendant's motion for new trial.

I concur in the remainder of the opinion.

I am authorized to state that Chief Judge Pope joins in this opinion.

DECIDED MARCH 18, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 — ▮▮▮▮▮▮▮▮▮

*H. Bradford Morris, Jr.*, for appellant.
*Lydia Sartain, District Attorney, Lee Darragh, Assistant District Attorney*, for appellee.