**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 1, 2013**

# In the Court of Appeals of Georgia

A13A0193. THE STATE v. SIMMONS et al.

DILLARD, Judge.

Following a jury trial, Corey Simmons and Samuel Johnson (collectively "defendants") were convicted on two counts of armed robbery. Shortly thereafter, both filed motions for new trial based on newly discovered evidence, which the trial court granted. The State now appeals, arguing that the trial court erred in granting defendants a new trial because the newly discovered evidence was not material and was cumulative of other evidence. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that some time between 12:00 a.m. and 1:00 a.m. on September 27, 2009, Derrick Arnold and Jason Barnes set out to meet some friends at a nightclub in the Midtown

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

area of Atlanta. After parking their car near the intersection of Juniper Street and 7th Street, Arnold and Barnes began walking up 7th Street toward Peachtree Street (where the nightclub was located), when they were approached by three young men, who asked them about nightclubs in the area. Barnes answered their question while he and Arnold continued walking toward the club, and the three men continued walking in the opposite direction. However, a moment later, the three men came up behind Barnes, and one pushed him to the ground while another pulled out a handgun. The gunman then struck Barnes in the head with his gun and demanded that Arnold and Barnes give up any valuables. Arnold and Barnes complied, giving the perpetrators their wallets, watches, mobile phones, some jewelry, and Barnes's Nike Air Jordan sneakers. At that point, the three perpetrators fled, and Arnold and Barnes rushed toward the nightclub to seek assistance.

Upon reaching the nightclub, Arnold and Barnes informed their friends about the robbery and used one friend's mobile phone to call the police. The police arrived within five or ten minutes, and Arnold and Barnes provided information about the robbery, including a description of the three perpetrators. Specifically, they stated that the gunman was approximately six feet tall, 200 pounds, and dark-skinned; the man that pushed Barnes down was slightly taller, slimmer, brown-skinned, and wore his

hair in either dreadlocks or braids but was also wearing a baseball cap; and the third man was shorter than the other two men and appeared significantly younger.

After the police concluded taking Arnold and Barnes's statements and left the nightclub, Barnes recalled that his stolen mobile phone contained an application that allowed the owner to log on to the mobile-phone company's website and track the phone via its global-positioning system. Consequently, Barnes and his friends contacted another friend, who was at home, and asked him to go online and attempt to track Barnes's phone. Within a few minutes that friend successfully located Barnes's phone and determined that the perpetrators had recently been to a gas station just a few blocks away from the Midtown nightclub but were now headed southbound on Interstate 85.

At that point, two of Arnold and Barnes's friends, who were with them at the nightclub, got in their car and began an attempt to follow the perpetrators based on directions provided by the third friend who continued to track the phone online. Eventually, they tracked the phone to a gas station in Riverdale, where they observed two men matching the perpetrators' description enter a gold Toyota Corolla with a Florida license plate. When the Corolla left the gas station, Arnold and Barnes's friends continued their pursuit but lost sight of the vehicle after getting caught at a red

3

light. However, their friend tracking the phone by computer determined that the perpetrators' vehicle, after briefly heading west on Interstate 285, stopped again at a motel on Old National Highway in College Park. The pursuing friends arrived at the motel not long thereafter, saw the Corolla parked in the lot, but did not observe anyone in the vehicle at that time. A few minutes later, which by now was some time after 3:00 a.m., they found a College Park police officer and informed him of the robbery and their tracking of the perpetrators' vehicle.

The College Park police officer called for backup, and after the other officers arrived, they arrested William Phillips, who by that time was sitting in the Corolla, and Samuel Johnson, who was standing near the vehicle while talking on a mobile phone. Following these arrests, the police determined that both Phillips and Johnson had Florida driver's licenses, and in searching the Corolla, the police found Barnes's debit card, a mobile phone, and a pair of Nike Air Jordan sneakers. The police then directed one of the pursuing friends to call Arnold and Barnes's stolen mobile phones. And upon calling those respective numbers, a mobile phone found in the Corolla and another phone that was in Johnson's possession rang.

Not long after the arrests, Arnold and Barnes arrived on the scene and identified Phillips as the younger perpetrator and Johnson as the perpetrator with

4

dreadlocks or braids, despite the fact that Johnson did not wear his hair in either dreadlocks or braids. And a few minutes later, as the police officers continued their investigation of the suspects and their vehicle, Arnold and Barnes observed another man casually approaching the police cars and recognized him as the dark-skinned man who brandished the handgun during the robbery. Consequently, officers arrested this third man, who was identified by his Florida driver's license as Corey Simmons, despite Simmons's protests that he had only come to the motel to retrieve a friend's car.

Simmons, Johnson, and Phillips were each charged, via the same indictment, with two counts of armed robbery.[2] Thereafter, Simmons and Johnson[3] were jointly tried, during which Arnold, Barnes, and their friends testified regarding the robbery and subsequent pursuit of the perpetrators by tracking Barnes's mobile phone. And although the Atlanta police officers involved in the investigation testified, none of the College Park officers involved in the arrests of Simmons and Johnson were called as witnesses.

---

[2] *See* OCGA § 16-8-41 (a).

[3] For reasons not entirely clear from the record, Phillips was apparently in custody in the State of Florida at the time of the trial and, thus, was not tried with Simmons and Johnson.

As for the defense, Johnson called no witnesses on his behalf, but one of Simmons's friends testified that she, her brother, and Simmons went to a nightclub in East Point at approximately 11:30 p.m. on the night of the robbery in Midtown and that they stayed there until shortly before the club closed at 3:00 a.m. In addition, one of the East Point nightclub's security guards recalled Simmons arriving some time between 11:30 p.m. and 12:00 a.m. but conceded that he did not know what time Simmons left.

After the evidence was closed, the trial court charged the jury and directed the jury members to begin their deliberations. However, less than two hours later, at around 5:00 p.m., the trial court adjourned for the day and instructed the jury that it could continue deliberations the next morning. That morning, after the jury reconvened for its deliberations, Simmons's counsel informed the court that Simmons's mobile-phone company contacted his office late the previous day to inform him that records for Simmons's phone reflecting its usage on the night of the robbery—which the company previously claimed did not exist—had in fact been located. Simmons's counsel further explained that these records further corroborated Simmons's alibi that he was at the nightclub in East Point at the time the robbery occurred in Midtown. Accordingly, counsel requested a mistrial so that the newly

6

discovered evidence could be introduced at retrial. However, the trial court was unwilling to halt the jury's deliberations and denied Simmons's request. And shortly thereafter, the jury found Simmons and Johnson guilty on both counts of armed robbery.

One month later, Simmons and Johnson filed separate motions for new trial, in which they both argued that the newly discovered mobile-phone records warranted a new trial. And during the ensuing hearing, Simmons's primary witness was a representative of his mobile-phone company. The representative first explained how the company's cell towers can determine the location from which a phone on the company's network is used and that this information, as well as the number called and time of the call, was retained by the company and kept in its records. The representative then provided detailed testimony about the records for Simmons's mobile phone on the night of the robbery, stating that at 6:33 p.m., the phone was used from a location in Douglasville, and at 9:09 p.m., it was used from a location in Riverdale. The representative further testified that at 12:09 a.m., 12:40 a.m., 12:58 a.m., 1:00 a.m., 1:59 a.m., and 2:52 a.m. Simmons's phone was used from a location in East Point. And at 3:06 a.m. and 3:10 a.m., it was used from a location in College Park off of Old National Highway. The representative also confirmed that his

company initially erred when it informed Simmons's counsel that it did not keep records for the type of pre-paid mobile phone that Simmons owned.

In addition to the mobile-phone-company representative, Simmons's sister and his girlfriend testified that the mobile phone number in the admitted phone records was in fact what they knew to be Simmons's number and that on the night of the robbery, Simmons had been at their respective homes in Douglasville and Riverdale, as the records indicated. Simmons's sister also testified that Simmons called her after his arrest and asked her to retrieve his mobile phone from the College Park jail. Finally, Simmons introduced evidence indicating that the location of the nightclub that he claimed to have patronized around the time of the robbery corresponded to the East Point location from which his mobile phone was used between 12:09 a.m. and 1:00 a.m. and again at 1:59 a.m. And based on this newly discovered evidence, the trial court granted both Simmons and Johnson's motions for new trial. This appeal from the State follows.[4]

---

[4] *See* OCGA § 5-7-1 (a) (7); OCGA § 5-7-2 (b) (2). Although the mobile-phone records pertained more directly to Simmons's defense, given that the State's theory of the case inextricably linked Simmons and Johnson as committing the armed robbery together, the trial court found that the newly discovered records possibly cast doubt on the victims' identification of all the perpetrators and thus warranted a new trial for Johnson as well. On appeal, the State does not take issue with this aspect of the trial court's ruling and only contends that the newly discovered evidence does not

At the outset, we note that "[t]he grant or denial of a motion for new trial based on newly discovered evidence is largely discretionary with the trial judge."[5] And the discretion exercised "will not be disturbed in absence of abuse."[6] Furthermore, a trial court's exercise of such discretion is "entitled to great consideration."[7] With these guiding principles in mind, we turn now to the State's claim of error.

On appeal, the State contends that the trial court abused its discretion in granting Simmons and Johnson's motions for new trial based on newly discovered evidence, arguing that the newly discovered mobile-phone records were not so material that they would probably produce a different verdict and that they were cumulative. We disagree.

In *Timberlake v. State*,[8] the Supreme Court of Georgia held that a defendant seeking a new trial based on newly discovered evidence must satisfy the court

---

require a new trial for either defendant. Accordingly, that is the only issue we now address.

[5] *James v. State*, 115 Ga. App. 822, 824 (156 SE2d 183) (1967).

[6] *Id.*

[7] *Taylor v. State*, 307 Ga. App. 487, 487 (705 SE2d 295) (2010) (punctuation omitted).

[8] 246 Ga. 488 (271 SE2d 792) (1980).

9

(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.[9]

Furthermore, "[a]ll six requirements must be complied with to secure a new trial."[10]

The State first argues that the newly discovered mobile-phone records, which indicate that Simmons's mobile phone was used at the East Point nightclub between 12:09 a.m. and 1:00 a.m., and then again at 1:59 a.m., were not so material that they would probably produce a different verdict. Specifically, the State argues that the records do not prove that it was actually Simmons who used the phone at those times and that even if he did have possession of his phone the entire night, the records do not negate the possibility that he left the nightclub after the 1:00 a.m. call, drove to Midtown, committed the robbery, and then returned to the club by 1:59 a.m. However, while the State is correct that the mobile-phone records do not render

---

[9] *Id.* at 491 (1) (punctuation omitted).

[10] *Id.*; *see Taylor*, 307 Ga. App. at 488 (2) ("Failure to show one requirement is sufficient to deny a motion for a new trial." (punctuation omitted)).

10

Simmons's participation in the Midtown robbery impossible, we disagree with the State's contention that the records were not material. Indeed, whether evidence meets the materiality requirement cannot be reduced to a mathematical probability, because jurors are the ultimate judges of the import of evidence admitted during trial, and it is difficult to accurately predict their reaction to such evidence.[11]

And here, the mobile-phone records corroborated the testimony of Simmons's witness, who claimed that Simmons was at the East Point nightclub with her and her brother during the time the robbery occurred. Additionally, even setting aside that witness's testimony, the records on their own cast doubt on Simmons's participation in the robbery. Indeed, if the crime occurred some time after 1:00 a.m., as the State asserts,[12] finding Simmons guilty would necessarily require concluding that Simmons either left his mobile phone with someone else at the nightclub, or that he committed the crime within a very compressed time frame that entailed leaving East Point after

---

[11] *See Bell v. State*, 227 Ga. 800, 807 (3) (183 SE2d 357) (1971) (noting that the materiality of the evidence "cannot be reduced to a mathematical probability, since jurors are the ultimate judges of the credibility of witnesses and no prognostication of their reaction to such evidence can be completely accurately made.").

[12] We note that even this assumption is not beyond doubt. Although Barnes testified that the robbery occurred some time after 1:00 a.m., Arnold testified that he believed it occurred some time around 11:30 p.m. or 12:00 a.m.

11

1:00 a.m., driving the approximately 15 or 20 minutes the State concedes it would take to travel to Midtown, finding parking nearby, approaching the victims on foot before robbing them, and then driving back to East Point before 1:59 a.m. Given these circumstances, we simply cannot say that the trial court abused its discretion in finding that Simmons's newly discovered mobile-phone records were so material that they would probably produce a different verdict.[13]

---

[13] *See Bell*, 227 Ga. at 807-08 (3) (reversing denial of defendant's motion for new trial based on newly discovered material evidence when person convicted for another crime provided an affidavit stating that he committed the crime for which defendant was convicted and that defendant had not participated in it); *Humphrey v. State*, 207 Ga. App. 472, 475 (1) (428 SE2d 362) (1993) (reversing denial of defendant's motion for new trial based on new material evidence that alleged victim had made statements to witness indicating that victim had consented to sexual intercourse with defendant); *Lee v. State*, 146 Ga. App. 189, 192 (III) (245 SE2d 878) (1978) (holding that defendant was entitled to new trial because newly discovered eyewitness testimony that victim raised a gun toward defendant constituted material evidence supporting defendant's self-defense theory); *Walters v. State*, 128 Ga. App. 232, 234-35 (2) (196 SE2d 326) (1973) (reversing denial of defendant's motion for new trial because new evidence consisting of affidavit by sole and independent eyewitness to the crime that supported defendant's account of the shooting was material). *Compare Brinson v. State*, 288 Ga. 435, 436-37 (3) (704 SE2d 756) (2011) (holding, in the context of affirming the *denial* of a motion for new trial, that a receipt showing that defendant picked up food from a restaurant at around 8:30 p.m. was not material because the shooting for which defendant was convicted did not occur until 10:30 p.m. and, thus, the receipt did not impact whether defendant had time to commit the shooting).

The State also contends that the newly discovered mobile-phone records did not warrant the grant of a new trial because such evidence was merely cumulative of the testimony of those witnesses who stated that Simmons was at the East Point nightclub on the night of the robbery. Again, we disagree.

As our Supreme Court has explained, "[t]he true test as to whether evidence is cumulative depends not only on whether it tends to establish the same fact, but it may depend on whether the new evidence is of the same or different grade."[14] And it is only when newly discovered evidence "either relates to a particular material issue concerning which no witness has previously testified, or is of a *higher and different grade* from that previously had on the same material point, that it will ordinarily be taken outside the definition of cumulative evidence."[15]

And here, Simmons's mobile-phone records are not merely cumulative of the testimony provided by the witnesses who stated that he was at the nightclub in East Point on the night that Arnold and Barnes were robbed in Midtown. Indeed, the records constitute a higher grade of evidence that corroborates that testimony and

---

[14] *Brown v. State*, 264 Ga. 803, 806 (3) (450 SE2d 821) (1994) (punctuation omitted).

[15] *Id.* (emphasis supplied) (punctuation omitted); *see Bell*, 227 Ga. at 806-07 (3); *Humphrey*, 207 Ga. App. at 475 (1).

13

provides independent and objective support for Simmons's claim that he was at the nightclub in East Point at the time the robbery was committed in another part of town.[16] Accordingly, the trial court did not abuse its discretion in finding that Simmons's mobile-phone records were not cumulative of other evidence.

For all of the foregoing reasons, we affirm the trial court's grant of Simmons and Johnson's motions for new trial.

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*

---

[16] *See Bell*, 227 Ga. at 807 (3) (holding that newly discovered evidence that strengthened defendant's alibi was not cumulative because it was of a different grade); *Humphrey*, 207 Ga. App. at 475 (1) (holding that testimony of new witness corroborating defendant's claim that victim consented to sex was not cumulative).